# LANDMARK INVESTMENT GROUP, LLC *v.* CALCO CONSTRUCTION AND DEVELOPMENT COMPANY ET AL.
## (AC 34039)

Robinson, Bear and Espinosa, Js.

Argued September 19, 2012—officially released February 26, 2013

*Thomas J. Sansone,* with whom, on the brief, was *Kurtis Z. Piantek,* for the appellant (plaintiff).

*Walter A. Twachtman, Jr.,* for the appellees (named defendant et al.).

*Opinion*

ESPINOSA, J. The plaintiff, Landmark Investment Group, LLC, appeals from the trial court's judgment denying its application for a prejudgment remedy in the underlying civil action against the defendants Calco Construction & Development Company (Calco) and John A. Senese.[1] The plaintiff claims that, on the basis of the court's unchallenged factual findings, the court committed clear error by concluding that the plaintiff failed to demonstrate probable cause that the defendants (1) tortiously interfered with the plaintiff's contractual relations with a third party, Chung Family Realty Partnership, LLC (Chung, LLC), and (2) engaged in unfair and deceptive business practices in violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b et seq. We affirm the judgment of the trial court.

The following facts as found by the court are relevant to our resolution of this appeal. "The plaintiff and Chung, LLC, were parties to a purchase and sale agreement [plaintiff's agreement], involving property located at 311-349 New Britain Avenue, Plainville, Connecticut [property]. Chung, LLC, had acquired the property in 1999, but was unable to develop it successfully

---

[1] R. Calabrese Agency, LLC, and Ralph Calabrese also are named as defendants in the underlying civil action but are not parties to this appeal. We therefore refer in this opinion to Calco and Senese collectively as the defendants, and individually by name where appropriate.

due to the possible environmental contamination. The original contract between [the plaintiff] and Chung, LLC, was renegotiated when the plaintiff learned that Chung, LLC's consultant had derived an estimate that it would cost $1.3 million to perform the required environmental remediation at the site. This led to a second contract signed in June, 2005, which required Chung, LLC, to escrow most of the purchase price, and allow[ed] the plaintiff to effectuate the environmental remediation in accordance with a timetable set forth in the [plaintiff's agreement]. Also, to aid in covering the cost, the [plaintiff's agreement] provided that the parties would apply to the Connecticut brownfields redevelopment authority [brownfields] for clean up funding.

"Due to various delays in producing a remediation plan and submission of the loan application to brownfields, caused mainly by Chung, LLC's lack of funds, the town of Plainville [town] caused a study to be performed. The town hired a different licensed environmental professional, Tighe & Bond, which resulted in a report that the premises could be cleaned up and remediated for $265,000. This led the town to decide that it would no longer participate in the brownfields funding application since it determined that the cost was low enough that the developer could afford to conduct the remediation. Chung, LLC, and its attorney, Peter Barry, became concerned because it was . . . Barry's opinion that the absence of the brownfields funding would make the [plaintiff's agreement] impossible to perform since the time lines in the [plaintiff's agreement] were tied to the approval of the brownfields funding application. It was . . . Barry's professional opinion that the [plaintiff's agreement] would need to be renegotiated.

"A meeting was held on September 7, 2006, with . . . Barry, Henry Chung, [the owner and manager of Chung,

LLC], Ralph Calabrese . . . the listing real estate broker, Glenn Russo . . . [the plaintiff's] executive manager, and . . . Michael Tansley [the plaintiff's attorney]. At that meeting, a heated discussion took place, and Chung, [Barry] and Calabrese took the position that the contract was null and void. Calabrese communicated that Chung wanted to renegotiate the [June, 2005] contract with a lower contract sales price in light of the lowered remediation cost, as well as removing all conditions. [The plaintiff] did not agree and took the position that the [June, 2005] contract was still in effect and would not agree to the elimination of the contingencies. Russo had no faith in the Tighe & Bond report, and its estimate of the cost of the remediation. Chung, LLC, gave [the plaintiff] the opportunity to purchase the property outright, with no conditions at a significantly lower price of $1.8 million. The meeting ended with Russo walking out of the room. Thereafter, an exchange of correspondence took place and on October 27, 2006, Barry sent a letter to [the plaintiff] terminating the [June, 2005] contract. . . .

"[The plaintiff] brought suit to determine the propriety of the termination of the contract by Chung, LLC, and in *Landmark Investment Group, LLC* v. *Chung Family Realty Partnership, LLC*, [Superior Court, judicial district of New Britain, Docket No. CV-07-5003201-S (August 19, 2009)], the trial court found that Chung, LLC, had wrongfully terminated the [June, 2005] contract, and the finding and decision was affirmed [on appeal]. *Landmark Investment Group, LLC* v. *Chung Family Realty Partnership, LLC*, [125 Conn. App. 678, 708, 10 A.3d 61 (2010), cert. denied, 300 Conn. 914, 13 A.3d 1100 (2011)].

"During the same time frame . . . Senese, a developer with significant history and experience in the area of commercial real estate development, was also making inquiries into the purchase of the property. Senese

was familiar with the property as he had driven by it many times and saw the for sale sign directing inquiries to [R. Calabrese Agency, LLC]. He began to make inquiries into the property around December, 2005, and contacted Calabrese. Calabrese gave Senese the details with regard to the property, including the fact that the premises [was] under contract. [Calabrese and Senese had no business or personal relationship prior to this time.] In January, 2006, Senese with the assistance of Calabrese drew up a letter of intent in the name of Calco, with Senese's terms and conditions as a 'backup' offer. Calabrese presented the backup offer to Chung, LLC, which was never signed, and it eventually expired. Senese was aware there was another purchase[r] and a contract but never saw a copy.

"Even though the January, 2006 offer was not accepted, Senese continued to have interest in the property. Senese became aware of Tighe & Bond's report, which was prepared for the town . . . and available from the town, and met with them in August, 2006, on the premises to better understand the findings of the report. As a result of his inspection of the property and review of the report, Senese was satisfied with the environmental [report] of Tighe & Bond. He had conversations with Calabrese about the environmental cleanup costs, and Calabrese conveyed to Senese what . . . 'Chung would want.' . . . Senese determined the terms of Calco's offer, and asked Calabrese to submit another letter of intent to Chung, LLC, on behalf of Calco. The September 21, 2006 offer was also prepared by Calabrese based upon terms offered by Calco.[2] The offer lowered the price to $1.8 million and eliminated the contingencies contained in the first letter of intent. Calabrese arranged a meeting with Senese and Barry,

[2] The court determined that Calco's second offer was also made as a backup offer.

as well as . . . Chung and members of his family. Senese believed Chung liked his offer with no contingencies, but at that meeting Senese was unaware of the status of the [plaintiff's agreement] or of Chung's intention to terminate [it]. . . . Senese was told by . . . Barry that they would 'get back to [him] and if [they] proceed, [they] will draft a contract.' . . .

"That meeting gave rise to a proposed contract prepared by Barry which was executed by Senese on behalf of Calco, but never signed by Chung, LLC. . . . The proposed contract listed the price at $1.8 million, $450,000 less than the $2.25 million agreed to be paid by [the plaintiff], and specifically recognized that [the plaintiff] had a prior claim which might give rise to a lawsuit. Barry advised Chung to wait until after the first of the year before signing any agreement with another developer as it was his belief that if suit had not been brought by that time, Chung, LLC, would be free to sign a new contract with another developer whose offer was acceptable.

"Senese learned through his own attorney, who had performed a title search on the property, that a lis pendens had been filed on the land records by [the plaintiff]. Four months after the institution of the lawsuit, by [the plaintiff] against Chung, LLC, Calco and Chung, LLC, entered into an agreement, dated March 7, 2007, to purchase the [property]. The March agreement was specifically contingent upon the successful completion of the lawsuit in Chung, LLC's favor and the release of the contract and lis pendens on the land records by [the plaintiff]. Senese was aware that there were first and second mortgages . . . on the property and [of] their default status, and in April, 2007, purchased these mortgages from the purchase money mortgagees. Senese, an experienced and savvy business man, saw an opportunity for a business investment. The Chungs were paying interest at 8.5 percent and [Senese]

acquired a first and second mortgage on the premises at a slight discount, which mortgages were secured by real estate that Senese thought had substantial value. . . .

"Senese, aware of the Chungs' financial situation, also agreed to loan Chung, LLC, money for its legal fees during the first trial. Again, seeing a good investment of his money, Senese loaned Chung the money, at [10] percent interest, which loan was well collateralized by a mortgage on the [property] as well as property owned by Chung, LLC, in Manchester. Subsequent to the termination of the trial in which Chung, LLC, was not successful, Senese paid no further legal fees.

"In September, 2010, [in *Landmark Investment Group, LLC* v. *Chung Family Realty Partnership, LLC*, supra, 125 Conn. App. 708] the Appellate Court affirmed the judgment [of the trial court] in favor of [the plaintiff], and [the June, 2005] contract was restored. Although [the plaintiff] had been given [its] requested relief of specific performance, [it] neglected to exercise it. Ultimately, [the plaintiff] lost the opportunity to purchase and develop the property because its interest was foreclosed out by the town . . . which [had] instituted an action to foreclose its tax liens. The foreclosure action was commenced on April 14, 2010. Under the [plaintiff's agreement], Chung, LLC, had an obligation to keep the taxes current. [The plaintiff] attempted to buy the tax liens from [the town], but since the town was faced with competing offers, it elected not to sell the tax liens to anyone. [The plaintiff] offered to fund Chung, LLC, money to pay the tax liens conditioned on Calco being willing to subordinate its first and second mortgage position to a first mortgage in favor of [the plaintiff]. Calco would not agree. On March 19, 2011, a foreclosure sale was held on the property, and the successful bidder was a company [named] 311 NB Plainville, LLC, a company formed by Senese. The price was $1.3 million."

(Citations omitted.) The court also found that no person on behalf of the plaintiff had attempted to bid on the property.

The plaintiff initiated the action underlying this appeal on September 23, 2009, and filed the operative, third revised complaint on September 13, 2010. The plaintiff filed an application for a prejudgment remedy on June 23, 2011. In support of its application, the plaintiff relied on three counts of the operative complaint against the defendants: (1) tortious interference with the plaintiff's contractual relations, (2) a CUTPA violation and (3) civil conspiracy.[3] The court held an evidentiary hearing on the plaintiff's application on August 23, 24 and 25, 2011.

On November 4, 2011, in a memorandum of decision, the court denied the plaintiff's application for a prejudgment remedy. With respect to the plaintiff's tortious interference claim, the court found that "Senese's action[s] were nothing more than aggressive business practices. . . . Senese testified credibly that he became interested in the property and contacted the real estate agent, Calabrese, someone he had never worked with. Upon learning that there was a contract on the property, Senese submitted a backup offer to buy the property, which is a common practice in real estate and something Senese had done on many occasions before."

The court found that "[t]here was no evidence [at the time when Chung, LLC, determined that the June, 2005 contract could be terminated] that Senese had taken any intentional or malicious steps to constitute a tortious interference with the plaintiff's contractual relationship with Chung, LLC. The backup offer he had submitted in January, 2006, had expired. There was no

---

[3] On appeal, the plaintiff does not appear to challenge the court's findings or conclusions regarding the civil conspiracy count.

evidence that Senese had told either Chung or Calabrese that if Chung terminated the deal with [the plaintiff] that he would make another offer. . . . [Senese] was not informed of the termination of the [June, 2005] contract, and Barry told him that if they decided to go forward with his proposal, Barry would forward him a formal contract."

The court, in its memorandum of decision, concluded that the evidence did not support the plaintiff's claim that "the defendants' offers were made to manipulate Chung, LLC, and to motivate it *solely* for the purpose of breaching its contract with [the plaintiff]." (Emphasis in original.) The court found that there was no evidence that Senese enticed or manipulated Chung, LLC, into terminating its agreement with the plaintiff. The court also concluded that Calco had no obligation to subordinate its first and second mortgage position to a first mortgage in favor of the plaintiff, nor did it owe a duty to the plaintiff to pay real estate taxes on the property based on the agreement between Calco and Chung, LLC—a contract to which the plaintiff was neither a party nor beneficiary. The court determined that the defendants were not the cause of the plaintiff's loss of the property. The court concluded that the plaintiff's claims of misconduct by the defendants were unsupported by the evidence and that there was "no evidence that Senese and/or Calco made any misrepresentations or committed any other tort in the course of conduct which ultimately injured [the plaintiff]." The court concluded that the plaintiff had failed to demonstrate probable cause that a judgment would be rendered in its favor on any of the counts relied upon in its application. On November 14, 2011, the plaintiff filed the present appeal from the court's judgment denying its application. Additional facts will be set forth as necessary.

We first set forth the applicable law and the well established standard of review governing both of the

plaintiff's claims. "A prejudgment remedy means any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment. . . . General Statutes § 52-278a (d). A prejudgment remedy is available upon a finding by the court that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or setoffs, will be rendered in the matter in favor of the plaintiff. . . . General Statutes § 52-278d (a) (1). . . . Proof of probable cause as a condition of obtaining a prejudgment remedy is not as demanding as proof by a fair preponderance of the evidence. . . . The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. . . . Under this standard, the trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits. . . .

"As for [the] standard of review [on appeal], [our Supreme Court has instructed that a reviewing] court's role on review of the granting [or denial] of a prejudgment remedy is very circumscribed. . . . In its determination of probable cause, the trial court is vested with broad discretion which is not to be overruled in the absence of clear error. . . . In the absence of clear error, [a reviewing] court should not overrule the thoughtful decision of the trial court, which has had an

opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses. . . . [On appeal], therefore, we need only decide whether the trial court's conclusions were reasonable under the clear error standard." (Internal quotation marks omitted.) *Vincent Metro, LLC* v. *Ginsberg*, 139 Conn. App. 632, 637–38, 57 A.3d 781 (2012), cert. denied, 308 Conn. 907, 61 A.3d 1097 (2013). "[T]he clear error standard in this context is a heightened standard of deference that exceeds the level of deference afforded under the abuse of discretion standard. Therefore, this court will overrule the trial court's determination on a prejudgment remedy only if we are left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *TES Franchising, LLC* v. *Feldman*, 286 Conn. 132, 138 n.6, 943 A.2d 406 (2008).

I

The plaintiff first claims that the court committed clear error by concluding that it failed to demonstrate probable cause that the defendants tortiously interfered with its contractual relations with Chung, LLC. Specifically, the plaintiff argues that the facts, as found by the court, demonstrate that the defendants acted improperly, contrary to the norms of business and in a manner designed to usurp the plaintiff's status as the rightful purchaser of the property, such that the only logical conclusion the court could have drawn was that the defendants tortiously interfered with the contractual relationship between the plaintiff and Chung, LLC. We disagree.

"[Our Supreme Court] has long recognized a cause of action for tortious interference with contract rights. . . . The essential elements of such a claim include . . . the existence of a contractual or beneficial relationship and that the [defendant], knowing of that relationship, intentionally sought to interfere with it; and,

as a result, the plaintiff claimed to have suffered actual loss. . . . [F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . The burden is on the plaintiff to plead and prove at least some improper motive or improper means . . . on the part of the [defendant]. . . . The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification." (Citations omitted; internal quotation marks omitted.) *Stancuna* v. *Schaffer*, 122 Conn. App. 484, 488, 998 A.2d 1221 (2010).

As observed previously, the plaintiff does not challenge the court's factual findings. Instead, the plaintiff challenges only the court's legal conclusion that the plaintiff failed to establish probable cause that the defendants tortiously interfered with its contractual relationship with Chung, LLC. The plaintiff argues that the defendants' offers on the property were made to manipulate Chung, LLC, and for the sole purpose of motivating it to breach its contract with the plaintiff and that the defendants offered a special price to induce Chung, LLC, to breach its contract with the plaintiff. The plaintiff argues that the court should have rejected the defendants' argument that they made good faith backup offers. In addition, the plaintiff claims that virtually every other aspect of the defendants' relationship with Chung, LLC, was contrary to prudent business practices and provided further evidence of tortious interference,[4] despite the contrary findings of the court.

[4] Specifically, the plaintiff argues that the following facts supported a finding of probable cause of the defendants' intentional tortious interference: (1) the defendants entered into an agreement with Chung, LLC, to pay real estate taxes on the property and subsequently did not pay additional taxes after the first payment; (2) the defendants financed a portion of Chung, LLC's defense cost in the specific performance action regarding the property

Effectively, the plaintiff seeks to have this court draw every possible inference from the court's factual findings in favor of its arguments to the exclusion of the logical and well reasoned legal conclusions of the court. We decline to do so and conclude that there was no clear error in the court's conclusion that the plaintiff failed to establish probable cause.

The court, as the sole arbiter of the credibility of the witnesses and the weight to be given to specific testimony, was entitled to give more weight to the defendants' testimony about the nature of their offers and their relationship with Chung, LLC, than that of the plaintiff. We carefully have reviewed the court's analysis, set forth previously, underlying its conclusion that the plaintiff failed to demonstrate probable cause supporting its claim of tortious interference. The court's conclusion logically followed from the court's factual findings, and it does not reflect a misapplication of the relevant legal principles. Contrary to the plaintiff's assertion, the court's factual findings did not require the conclusion that there was probable cause that the defendants tortiously interfered with the plaintiff's contractual relationship with Chung, LLC. Affording the court the heightened deference due under the clear error standard, we conclude that there was no clear error by the court because we are not left with the definite and firm conviction that a mistake has been committed.

## II

Next, the plaintiff claims that the court committed clear error by concluding that the plaintiff failed to demonstrate probable cause that the defendants

against the plaintiff; (3) the defendants purchased the first and second mortgages on the property; (4) the defendants made an offer to the town to purchase the tax liens on the property; and (5) an entity related to the defendants purchased the property at a public foreclosure auction.

engaged in unfair and deceptive business practices in violation of CUTPA. Specifically, the plaintiff argues that the court should have concluded that the same facts underlying its tortious interference claim and the allegations of a civil conspiracy among the defendants, Calabrese and Barry,[5] rise to the level of a CUTPA violation. We are not persuaded.

The following additional facts as found by the court are relevant to our resolution of this claim. The court found that the plaintiff's CUTPA claim was based on the same allegations as those in its claim for tortious interference and civil conspiracy. Because the court found no probable cause to support the plaintiff's tortious interference or civil conspiracy claims, it found no probable cause for the plaintiff's CUTPA claim that was based on the same allegations. The court specifically acknowledged that, although there may be certain cases in which conduct is actionable under CUTPA but does not give rise to a claim of tortious interference, there was still no probable cause to support a CUTPA violation in this case because the court did not find any

---

[5] Because the success of the plaintiff's civil conspiracy claim in its prejudgment remedy application depended on the success of its claim of tortious interference, and because the court found no probable cause that tortious interference occurred, the court concluded that the plaintiff failed to establish probable cause for its claim of civil conspiracy. Further, the court gave no weight to the plaintiff's argument that a letter from Calabrese to Barry, asking Barry to review the June, 2005 contract to determine if Chung had "any way out of [the contract] if he so chooses," was evidence of a conspiracy. Furthermore, the court found that there was no evidence that Senese was even aware of the property or had any interest in acquiring it when the letter was sent.

On appeal, the plaintiff does not appear to challenge the court's conclusion that there was no probable cause to support its claim of civil conspiracy, yet, simultaneously appears to rely on the existence of such a conspiracy in support of its argument that there was probable cause that a CUTPA violation occurred. We defer to the court's unchallenged conclusion that there was no probable cause to support the civil conspiracy claim, and, accordingly, in our analysis of the CUTPA claim, we disregard any part of the plaintiff's argument that presumes the existence of such a conspiracy.

conduct by the defendants that was "deceitful, unfair or unscrupulous."

Section 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." "Connecticut courts, when determining whether a practice violates CUTPA, will consider (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen). . . . Thus, a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." (Internal quotation marks omitted.) *Bruno* v. *Whipple*, 138 Conn. App. 496, 516, 54 A.3d 184 (2012).

CUTPA liability embraces a wider range of business conduct than does a common-law tort action. *Sportsmen's Boating Corp.* v. *Hensley*, 192 Conn. 747, 756, 474 A.2d 780 (1984). "While liability in tort is imposed only if the defendant maliciously or deliberately interfered with a competitor's business expectancies, CUTPA liability is premised on a finding that the defendant engaged in unfair competition and unfair or deceptive trade practices." Id., 755.

As was the case in its first claim, the plaintiff does not challenge the factual findings of the court on appeal as they relate to its CUTPA claim. Instead, the plaintiff argues that the court should have concluded, on the basis of its factual findings, that the defendants committed a CUTPA violation. The plaintiff does little more

than to make a conclusory argument that the same findings on which it relies in its tortious interference claim rise to the level of a CUTPA violation. In addition to concluding that there was no probable cause to support the plaintiff's CUTPA claim due to the lack of probable cause for the tortious interference and civil conspiracy claims on which the CUTPA claim was based, the court found that the defendants' conduct was not deceitful, unfair or unscrupulous. The court also found that the defendants' actions were nothing more than aggressive business practices. None of the court's findings, either legally or logically, lead to a conclusion that the defendants' actions were unfair, deceptive or contrary to public policy. To the contrary, the court's findings reflect that the defendants acted in accordance with common business norms. Because we are not left with the definite and firm conviction that a mistake was made by the court in concluding that the plaintiff failed to establish probable cause that the defendants' actions constituted a CUTPA violation, we conclude that there was no clear error.

The judgment is affirmed.

In this opinion the other judges concurred.