******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LINDA YOFFE SOLON *v.* JOSEPH M.
SLATER ET AL.
(AC 42931)

Alvord, Elgo and Alexander, Js.

*Syllabus*

The plaintiff sought damages from the defendants, the son of her deceased
husband, M, and M's attorney, J, for, inter alia, tortious interference
with contractual relations relating to an antenuptial agreement executed
by the plaintiff and M and tortious interference with her right of inheri-
tance from M's estate. The plaintiff and M entered into the antenuptial
agreement a few days prior to their marriage. Approximately six months
later, M was diagnosed with cancer and told that he had less than one
year left to live. Before undergoing palliative surgery in 2013, M signed
a will that was prepared by J. The plaintiff alleges that she and M
discussed amending the antenuptial agreement to provide that certain
of M's assets, including their marital home, would be transferred to the
plaintiff at the time of his death and that M memorialized the intended
changes in a handwritten note the day after he signed the 2013 will.
Although the plaintiff and M both engaged attorneys to represent them
in negotiations pertaining to the modification of the antenuptial agree-
ment, it was never amended. In early 2014, M signed a second will that
was prepared by an estate planning attorney. It did not reflect the
discussed modifications to the antenuptial agreement and instead left
his residuary estate to a trust benefitting his two adult children from a
prior marriage, including his son. Following M's death, J submitted an
application to the Probate Court for the admission of the 2014 will. The
plaintiff objected, claiming that, at the time of its execution, M lacked
testamentary capacity and was under the undue influence of the defen-
dants. The Probate Court held an evidentiary hearing and determined
that there was insufficient evidence to prove either of the plaintiff's
claims. The plaintiff then commenced the present action, claiming that
the defendants manipulated M to prevent him from amending the ante-
nuptial agreement and the 2014 will. The defendants filed motions for
summary judgment arguing that the plaintiff's claims were barred by
the doctrines of res judicata and collateral estoppel because they pre-
viously had been adjudicated and decided by the Probate Court. On the
basis of the collateral estoppel effect of the Probate Court decree, the
trial court granted the defendants' motions for summary judgment and
rendered judgment thereon, from which the plaintiff appealed to this
court. *Held* that the trial court properly rendered summary judgment
in favor of the defendants on the basis of the doctrine of collateral
estoppel with respect to the plaintiff's tortious interference claims
because the claims presented issues identical to those actually litigated
and necessarily determined by the Probate Court: following a full eviden-
tiary hearing, the Probate Court admitted the 2014 will over the plaintiff's
objection because it determined that there was insufficient evidence to
show that the disposition of the estate in the 2014 will was the result
of undue influence; moreover, the plaintiff's tortious interference claims
that were raised in the trial court relied on the same factual predicate
offered in support of her undue influence claim in the Probate Court,
namely, whether the defendants' alleged conduct rose to a level of
impropriety sufficient to support a finding of tortious conduct; further-
more, because the plaintiff did not appeal from the Probate Court decree,
it was considered a final judgment for the purposes of collateral estoppel.

Argued January 7—officially released May 18, 2021

*Procedural History*

Action to recover damages for, inter alia, tortious
interference with contractual relations, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Stamford-Norwalk, where the court, *Povodator,*

*J.*, granted the defendants' motions for summary judgment with respect to certain counts of the complaint; thereafter, the plaintiff withdrew the remaining counts of the complaint; judgment for the defendants, from which the plaintiff appealed to this court. *Affirmed.*

*Eric D. Grayson*, for the appellant (plaintiff).

*William N. Wright*, with whom, on the brief, was *John W. Cannavino*, for the appellees (defendants).

*Opinion*

ALVORD, J. This appeal arises out of an action by the plaintiff, Linda Yoffe Solon, in which she alleges that the defendants, Joseph M. Slater and Joshua Solon, tortiously interfered with (1) contractual relations regarding an antenuptial agreement executed by the plaintiff and her deceased husband, Michael Solon (decedent), and (2) the plaintiff's right of inheritance from the decedent's estate.[1] On appeal, the plaintiff claims that the trial court erred in rendering summary judgment in favor of the defendants on the basis that her claims were barred by the doctrine of collateral estoppel by virtue of a prior decree of the Probate Court. We disagree and, accordingly, affirm the judgment of the trial court.[2]

The following facts and procedural history are relevant to this appeal. The plaintiff and the decedent first met in December, 2010. In May, 2013, they were married. At the time of the marriage, the decedent had two adult children from a previous marriage: a son, Joshua Solon, and a daughter, Carly Solon. Slater was both a longtime friend and attorney of the decedent.

On or about May 22, 2013, just prior to getting married, the plaintiff and the decedent executed an antenuptial agreement. The antenuptial agreement provided, inter alia, for the plaintiff to have a life estate interest in the real property located at 49 Alexandra Drive in Stamford (Stamford home). The antenuptial agreement further provided that the decedent's estate would be responsible for paying the mortgage, property taxes, utilities, and associated expenses and repairs at the Stamford home.

In November, 2013, approximately six months after the plaintiff's marriage to the decedent, the decedent was diagnosed with pancreatic cancer. The prognosis was that he had less than one year left to live. The decedent elected a surgical course of treatment. Prior to surgery, he met with Slater concerning the preparation of a last will and testament. On November 8, 2013, the decedent signed a last will and testament prepared by Slater (2013 will).

After undergoing the surgery, the decedent met with an estate planning attorney, Howard S. Tuthill III, concerning his estate plan. On February 6, 2014, Tuthill prepared a second will for the decedent (2014 will).

Shortly after the decedent's early November diagnosis, the plaintiff and the decedent discussed amending their antenuptial agreement. The plaintiff alleged that the decedent provided her with a handwritten note dated November 9, 2013 (November note), the day after the decedent executed the 2013 will, which purportedly memorialized the intended changes to the antenuptial agreement. The November note indicated: "I want to leave the house to [the plaintiff]—[the plaintiff] will

get the 200k plus annuity[,] [the plaintiff] will get [the] ETrade acct[,] [the plaintiff] will get approx 90–110k dollars."

Thereafter, in early 2014, the decedent engaged Attorney Edward Nusbaum to represent him in negotiations pertaining to modifying the antenuptial agreement. The plaintiff was represented in the negotiations by Attorney Arnold Rutkin. Although Nusbaum and Rutkin discussed the proposal set forth in the November note,[3] the negotiations ultimately failed and the plaintiff and the decedent never amended their antenuptial agreement.

On March 13, 2014, the decedent left the Stamford home to reside at the home of his former wife, Lori Solon, on Long Island (Long Island home). The plaintiff characterized his departure as "essentially a kidnapping" by the defendants, such that the decedent was "forcibly removed" from the Stamford home, in the "complete control and custody" of the defendants, and "subject to undue influence and manipulation" by them. The defendants produced evidence to the effect that the decedent's departure from the Stamford home was volitional.

From March 13, 2014, until the date of his death, the decedent resided at the Long Island home. During that time, he communicated with the plaintiff on a few occasions by e-mail, text message, and telephone; these communications were primarily initiated by the plaintiff.[4] The decedent died on April 19, 2014.

On or about June 4, 2014, Slater submitted an application to the Probate Court for the admission of the 2014 will.[5] The plaintiff filed an objection to its admission, claiming that the decedent executed the 2014 will under the defendants' undue influence[6] and also that the decedent had lacked testamentary capacity to execute the documents.

On October 6, 2014, while the Probate Court proceedings were still pending, the plaintiff commenced an action in the Superior Court against the defendants, both individually and in Slater's fiduciary capacity as administrator of the decedent's estate (first action). *Solon* v. *Slater*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-14-6023538-S (May 12, 2015). Her complaint set forth the following five counts, all sounding in tort: (1) tortious interference with contractual relations; (2) tortious interference with right of inheritance; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; and (5) negligence. Specifically, the plaintiff alleged that the defendants, by way of manipulation, prevented the decedent from amending the antenuptial agreement or revising his will for the benefit of the plaintiff. As relief, the plaintiff sought the total value of the assets of the decedent's estate that were listed in the Novem-

ber note: $850,000, representing the value of the title to the Stamford home; $240,500, representing the proceeds of an annuity held by the decedent; $100,000 from an E-Trade account held by the decedent; $100,000 from the decedent's bank account; and $5,000,000, representing the decedent's 50 percent ownership interest in his family's business, B&F Electric Motors, Inc. (Solon estate assets).

The defendants moved to dismiss the first action on the ground that the Probate Court had not yet ruled on the admission of the 2014 will and, therefore, there was no justiciable controversy. By memorandum of decision dated May 12, 2015, the court, *Heller, J.*, dismissed the first action against the defendants for lack of subject matter jurisdiction. The court explained that the Solon estate assets were subject to the jurisdiction of the Probate Court: "All of the property that the plaintiff argues would have passed to her on the decedent's death, but for the defendants' improper conduct, is presently subject to the jurisdiction of the Probate Court. . . . [S]hould the Probate Court admit the February, 2014 will to probate over the plaintiff's objection, finding that the decedent was not subject to the defendants' undue influence, the Probate Court's order will be a final judgment for res judicata purposes, if no appeal is taken, and the plaintiff's claims in this action will be barred."

On June 17, 2015, the Probate Court, *Fox, J.*, held an evidentiary hearing concerning the plaintiff's objections to the admission of the 2014 will. On August 20, 2015, the Probate Court issued a decree admitting the 2014 will to probate over the plaintiff's objections (Probate Court decree). The Probate Court first determined that "the will was properly executed in accordance with [General Statutes] § 45a-251[7] and that there is insufficient evidence to show that the decedent did not have the testamentary capacity to make the subject will at the time of its execution in accordance with [General Statutes] § 45a-250."[8] (Footnote added.) Next, the Probate Court determined that "there is insufficient evidence to show that the disposition of the decedent's estate in his [2014 will] was a result of undue influence." The plaintiff did not appeal the Probate Court decree.

In making its determination, the Probate Court considered the following evidence with respect to the decedent's estate planning. The decedent's 2014 will pours his residuary estate into a revocable trust, naming his children, Joshua Solon and Carly Solon, as the sole beneficiaries. The decedent provided for the plaintiff under the antenuptial agreement. The plaintiff testified that she knew that the decedent was reviewing estate planning documents with his attorney in the period from January 14 through February 6, 2014. She was working during the day and, therefore, did not accompany him to these meetings. However, Joshua Solon

and Slater took the decedent to four or five meetings that he had with Tuthill.

The Probate Court considered the following evidence with respect to the decedent's marriage to the plaintiff and their antenuptial agreement. The decedent and the plaintiff first met in December, 2010, and then married on May 23, 2013. The day before the marriage, the decedent and the plaintiff entered into an antenuptial agreement. The plaintiff testified that the decedent repeatedly told her he would " 'take care of her for life,' " and that he intended to change the antenuptial agreement to give her, inter alia, the Stamford home as well as two generous bank accounts. To support her allegations, the plaintiff provided the Probate Court with the November note. The plaintiff testified that, in January and February, 2014, she and the decedent had consulted with divorce attorneys to amend their antenuptial agreement to conform to the terms of the November note. This amended agreement, however, never was finalized.

The Probate Court considered the following evidence with respect to the decedent's diagnosis, treatment, and overall health. The plaintiff testified that in November, 2013, six months after her marriage to the decedent, the decedent received the diagnosis of late stage pancreatic cancer. The decedent had palliative surgery, after which he was prescribed strong pain alleviating drugs. The plaintiff contended that the decedent was very sick and heavily medicated.

The Probate Court considered the following evidence with respect to the plaintiff's and the defendants' care of and visitation with the decedent. Prior to March 13, 2014, the plaintiff testified that Joshua Solon often took care of the decedent during the day when the plaintiff was at work. Slater also frequently visited the decedent at the Stamford home. The plaintiff further testified that on March 13, 2014, when she came home from work, the decedent was gone. Joshua Solon and Carly Solon had taken him from the Stamford home. The plaintiff stated that she was not allowed to see the decedent or to " 'say goodbye.' " Joshua Solon and Carly Solon did not inform her of the decedent's death on April 19, 2014.

On September 2, 2015, the plaintiff commenced the present action. On February 9, 2016, she filed a revised complaint (operative complaint), which set forth the same five tort counts contained in the first action: (1) tortious interference with contractual relations; (2) tortious interference with right of inheritance; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; and (5) negligence.[9] Specifically, with respect to counts one and two of the plaintiff's operative complaint, the plaintiff alleged that the decedent "was preparing either by [amendment to the antenuptial agreement] or by will, to leave [the plaintiff the Solon estate assets that were listed in the November note]." The plaintiff maintained that the

decedent's 2014 will was executed "under the influence and control" of the defendants. The plaintiff further maintained that the reason that the antenuptial agreement was not modified was because on March 13, 2014, the defendants, "acting individually and in concert, forcibly removed and essentially kidnapped [the decedent] from the marital home . . . so [that the decedent] would be in their complete control and custody and under their influence and manipulation." The plaintiff asserted that the defendants, "[b]y using their undue influence and manipulation prior to the time [that] they took [the decedent] from [the Stamford] home and thereafter, while he was kept at an undisclosed location . . . and incommunicado from [the plaintiff], the defendants . . . interfered with [her] contractual relations and expectancies, in that the terms of the [amendments to the antenuptial agreement], which had been agreed to, were never reduced to writing."

On April 20, 2017, the defendants separately moved for summary judgment on the grounds that the plaintiff's claims were barred by the doctrines of res judicata and collateral estoppel because those claims had been "previously adjudicated and decided by the Probate Court." On July 7, 2017, the plaintiff filed a pleading captioned "Plaintiff's limited objection to the portion of the defendants' summary judgment motion dealing with collateral estoppel." On July 10, 2017, the court heard argument on the pending motions for summary judgment. On July 24, 2017, both parties submitted supplemental memoranda addressing the potential for the preclusive effect of a Probate Court decree based on collateral estoppel.

On January 8, 2018, the trial court, *Povodator, J.*, issued a memorandum of decision, in which it rendered summary judgment in favor of the defendants on counts one and two of the plaintiff's complaint, tortious interference with contractual relations and tortious interference with the right of inheritance, based on the collateral estoppel effect of the Probate Court decree.[10] The court determined that the doctrine of res judicata did not bar the plaintiff's claims.[11] In its memorandum of decision, the court found that "[t]he first two claims— tortious interference with contractual relations and with a right of inheritance—are dependent on a level of impropriety that is foreclosed by the Probate Court order. There needs to be tortious conduct that interferes with some right of the plaintiff, and the contractual and inheritance-based claims seem to be necessarily dependent on the claimed wrongfulness of conduct directed to the [antenuptial] agreement and operative will." The court observed that the plaintiff's claims asserted in the Superior Court rested on "the same factual predicate" as the plaintiff's claims in the Probate Court. Accordingly, the court held that, in light of the Probate Court's determination that the 2014 will "was not the product of undue influence or lack of testamen-

tary capacity . . . [and] the interrelationship between the [antenuptial] agreement and the will with respect to the ultimate disposition of the decedent's estate, the claim [in this action] of some wrongfulness [concerning the disposition of the decedent's estate] cannot survive the determination by the Probate Court that the will properly reflected the final wishes of the decedent." This appeal followed.[12]

Before addressing the plaintiff's claim on appeal, we note the applicable standard of review. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]he scope of our review of the trial court's decision to grant the [defendant's] motion for summary judgment is plenary. . . . Additionally, the applicability of the doctrine of collateral estoppel presents a question of law, over which this court's review is also plenary." (Citation omitted; internal quotation marks omitted.) *Doyle* v. *Universal Underwriters Ins. Co.*, 179 Conn. App. 9, 13–14, 178 A.3d 445 (2017).

"The fundamental principles underlying the doctrine are well established. Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was *actually litigated* and *necessarily determined* in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been *fully and fairly litigated in the first action.* It also must have been actually decided and the decision must have been necessary to the judgment. . . .

"An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . To establish whether collateral estoppel applies, the court must determine what facts were necessarily determined in the first trial, and must then assess whether the [party] is attempting to relitigate those facts in the second proceeding. . . . In order for collateral estoppel to bar the relitigation of an issue in a later proceeding, the issue concerning which relitigation is sought to be estopped *must be identical* to the

issue decided in the prior proceeding." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Kimberly C.* v. *Anthony C.*, 179 Conn. App. 856, 861, 182 A.3d 106 (2018).

On appeal, the plaintiff claims that the trial court erred in rendering summary judgment with respect to the two tortious interference counts on the basis of collateral estoppel barring the relitigation of issues decided by the Probate Court decree. Specifically, the plaintiff argues that she "did not have a full and fair opportunity to litigate her tort claims seeking money damages before the Probate Court, which only had jurisdiction to decide the questions of testamentary capacity and undue influence [as] to the execution of the February 2014 will." The plaintiff maintains that "since the Probate Court . . . did not have jurisdiction, exclusive or otherwise over . . . count [one], tortious interference with a contractual expectancy or count [two], tortious interference with the expectation of an inheritance, there can be no collateral estoppel as a matter of law . . . ."[13] (Internal quotation marks omitted.) In response, the defendants contend that "[i]n both the Probate Court proceeding and the Superior Court action, the plaintiff claimed that . . . the defendants engaged in wrongful conduct that constituted undue influence in order to prevent the decedent from [amending the antenuptial agreement] and cause him to execute the [2014 will], thereby preventing the plaintiff from receiving the Solon estate assets" that were listed in the November note. The defendants further maintain that "[t]his alleged wrongdoing is the dispositive issue that is common to both the Probate Court proceeding and this action. It was decided against the plaintiff in the Probate Court following a full evidentiary hearing. Consequently . . . the Probate Court decree precludes the plaintiff's tortious interference claims in the Superior Court action." We agree with the defendants.

We begin by determining what facts were necessarily determined in the Probate Court. See *Kimberly C.* v. *Anthony C.*, supra, 179 Conn. App. 861. The Probate Court, after a full evidentiary hearing with respect to the issue of whether the defendants exerted undue influence over the decedent, admitted the decedent's 2014 will over the plaintiff's objection, determining, inter alia, that "there is insufficient evidence to show that the disposition of the decedent's estate in his [2014 will] was a result of undue influence."

"Undue influence is the exercise of sufficient control over the person, the validity of whose act is brought in question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised. . . . It is stated generally that there are four elements of undue influence: (1) a person who is subject to influence; (2) an opportunity to exert undue influence; (3) a disposition to exert undue influence;

and (4) a result indicating undue influence." (Citation omitted; internal quotation marks omitted.) *Dinan* v. *Marchand*, 279 Conn. 558, 560 n.1, 903 A.2d 201 (2006). The party claiming undue influence must show by a fair preponderance of the evidence that the influence was undue. See *Vaicunas* v. *Gaylord*, 196 Conn. App. 785, 803 n.5, 230 A.3d 826 (2020); Connecticut Civil Jury Instructions 4.2-15, available at https://www.jud.ct.gov/ JI/Civil/Civil.pdf (last visited April 29, 2021).

"The levels of susceptibility and pressure needed to prove undue influence have been fully summarized by [our Supreme Court]." *Stanton* v. *Grigley*, 177 Conn. 558, 565, 418 A.2d 923 (1979). "Pressure of whatever character, whether acting on the fears or hopes—if so exerted as to overpower volition without convincing the judgment—is a species of constraint under which no will can be made. Importunity or threats, such as the [testator] has not the courage to resist, moral command asserted and yielded to for the sake of peace and quiet, or of escaping from distress of mind or social discomfort—these, if carried to a degree in which the free play of the [testator's] judgment, discretion, or wish, is overborne, will constitute undue influence, though no force was either used or threatened. . . . [Undue influence] is shown by all the facts and circumstances surrounding the [testator], the family relations, the will, [his] condition of mind, and of body as affecting [his] mind, [his] condition of health, [his] dependence upon and subjection to the control of the person influencing, and the opportunity of such person to wield such an influence. Such an undue influence may be inferred as a fact from all the facts and circumstances aforesaid, and others of like nature that are in evidence in the case, even if there be no direct and positive proof of the existence and exercise of such an influence." (Internal quotation marks omitted.) *Lee* v. *Horrigan*, 140 Conn. 232, 238–39, 98 A.2d 909 (1953). Furthermore, "[t]here must be proof not only of undue influence but that its operative effect was to cause the testator to make a will which did not express his actual testamentary desires." *Lancaster* v. *Bank of New York*, 147 Conn. 566, 573–74, 164 A.2d 392 (1960); *Vaicunas* v. *Gaylord*, supra, 196 Conn. App. 804.

In its decree, the Probate Court reviewed the evidence submitted by the plaintiff in support of her claim of undue influence. Specifically, the Probate Court described the plaintiff's evidence pertaining to her marriage to the decedent, the decedent's diagnosis, treatment, and overall health, as well as the defendants' care and visitation of the decedent. In addition, the Probate Court discussed the plaintiff's evidence pertaining to the antenuptial agreement, the decedent's 2014 will, the November note, the negotiations to amend the antenuptial agreement, the defendants' involvement with the decedent's estate planning, as well as the events surrounding the decedent's departure from the Stamford

home. Considering all of the aforementioned evidence, the Probate Court necessarily determined that this factual predicate presented by the plaintiff did not rise to a level of impropriety by the defendants, "of whatever character," such as to affect the disposition of the decedent's estate. (Internal quotation marks omitted.) *Lee* v. *Horrigan,* supra, 140 Conn. 238; see *Lancaster* v. *Bank of New York*, supra, 147 Conn. 573–74.

We next assess whether the plaintiff is attempting to relitigate in the present action the facts that were necessarily determined in Probate Court. See *Kimberly C.* v. *Anthony C.*, supra, 179 Conn. App. 861. In the present case, the plaintiff maintains two counts of tortious interference against the defendants: (1) tortious interference with contract and (2) tortious interference with right of inheritance.

"[F]or a plaintiff successfully to prosecute . . . an action [for tortious interference,] it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . The burden is on the plaintiff to plead and prove at least some improper motive or improper means . . . on the part of the [defendant]. . . . The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification." (Internal quotation marks omitted.) *Landmark Investment Group, LLC* v. *Calco Construction & Development Co.*, 141 Conn. App. 40, 51, 60 A.3d 983 (2013); see also *Hart* v. *Hart*, Superior Court, judicial district of Windham, Docket No. CV-14-6007918-S (May 11, 2015) (60 Conn. L. Rptr. 399) ("[g]iven the established elements of a cause of action for tortious interference with contractual or beneficial relationships, the anticipated elements of a claim for tortious interference with an expectancy of inheritance are as follows . . . (3) tortious conduct by the defendant, such as fraud or undue influence"). The plaintiff has the burden of proving tortious interference by a preponderance of the evidence. *American Diamond Exchange, Inc.* v. *Alpert*, 101 Conn. App. 83, 105, 920 A.2d 357, cert. denied, 284 Conn. 901, 931 A.2d 261 (2007).

In support of her claims of tortious interference, the plaintiff relies on the same factual predicate that she offered in support of her undue influence claim in Probate Court. Namely, the plaintiff alleges that the decedent's 2014 will was executed "under the influence and control" of the defendants. The plaintiff further maintains that the reason that the antenuptial agreement was not modified was because the defendants, on March 13, 2014, "acting individually and in concert, forcibly removed and essentially kidnapped [the decedent] from the marital home . . . so [that the decedent] would be

in their complete control and custody and under their influence and manipulation." The plaintiff asserts that the defendants, "[b]y using their undue influence and manipulation prior to the time [that] they took [the decedent] from [the Stamford] home and thereafter . . . the defendants . . . interfered with [her] contractual relations and expectancies, in that the terms of the [amendments to the antenuptial agreement] . . . were never reduced to writing."

Common to a successful prosecution of both of the plaintiff's tortious interference claims is the issue of whether the defendants' alleged conduct rises to a level of impropriety that is sufficient to support a finding of tortious conduct. The Probate Court, however, already has determined that the aforementioned factual predicate on which the plaintiff relies to support her tortious interference claims does not rise to a level of impropriety, of whatever character, by the defendants such as to affect the disposition of the decedent's estate. In the Probate Court proceedings and in the present action, the plaintiff had the burden of proving the impropriety of the defendants' conduct by a preponderance of the evidence. See *Vaicunas* v. *Gaylord*, supra, 196 Conn. App. 803 n.5; Connecticut Civil Jury Instructions, supra, instruction 4.2-15. Furthermore, as our Supreme Court has recognized that the legal theories of tortious interference and undue influence both encompass a broad range of behavior; see *Lee* v. *Horrigan*, supra, 140 Conn. 238; *American Diamond Exchange, Inc.* v. *Alpert*, supra, 101 Conn. App. 91; the plaintiff was not precluded in the Probate Court proceedings from presenting evidence of the defendants' improper conduct that would be relevant to her claims in the present action.

The Probate Court, after a full evidentiary hearing with respect to the issue of whether the defendants exerted undue influence over the decedent, admitted the decedent's 2014 will over the plaintiff's objection. The defendants' conduct that was alleged by the plaintiff in the Probate Court to constitute undue influence is the same conduct that was alleged by the plaintiff in the present action to constitute tortious interference. The plaintiff did not appeal from the Probate Court decree. The Probate Court decree, therefore, is a final judgment for the purpose of the doctrine of collateral estoppel. See General Statutes § 45a-24 ("[a]ll orders, judgments and decrees of courts of probate, rendered after notice and from which no appeal is taken, shall be conclusive and shall be entitled to full faith, credit and validity and shall not be subject to collateral attack, except for fraud"); *Heussner* v. *Day, Berry & Howard, LLP*, 94 Conn. App. 569, 576, 893 A.2d 486 ("our case law is clear that Probate Court decrees are final judgments for the purpose of the doctrines of res judicata and collateral estoppel"), cert. denied, 278 Conn. 912, 899 A.2d 38 (2006).

Our review of the record indicates that the plaintiff presents the identical issue in the present action that was actually litigated and necessarily determined by the Probate Court. We conclude that the plaintiff is attempting to relitigate the propriety of the defendants' conduct with respect to the disposition of the decedent's estate, and, therefore, the court properly applied the doctrine of collateral estoppel with respect to counts one and two of the plaintiff's complaint.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See footnote 9 of this opinion.

[2] The plaintiff additionally challenges the propriety of the trial court's denial of her November 21, 2016 motion for an order of compliance and/or to compel and for sanctions. That motion sought to compel the production of documents, primarily, e-mails and their attachments, that the defendants withheld or redacted under a claim of privilege. Because we conclude that the court properly rendered summary judgment in favor of the defendants on the basis of collateral estoppel, we need not address the question of whether the court abused its discretion in denying the plaintiff's motion to compel.

[3] The plaintiff alleged in her operative complaint that, on January 10, 2014, Nusbaum sent Rutkin an e-mail confirming the handwritten instructions in the November note. The January 10, 2014 e-mail stated in relevant part: "It is my understanding that [the decedent] wishes to convey the property at 49 Alexandra Drive in Stamford to [the plaintiff], in which title will be held as joint tenants with rights of survivorship. Upon [the decedent's] death, the mortgage on that residence will be paid off by the estate in full within three months provided there are no complications in probating the estate. Until such time as the mortgage is retired, the regular monthly payments on the house will be the responsibility of the estate. [The decedent] will also transfer his current E-Trade brokerage account from his sole name to [the decedent and the plaintiff], as joint tenants with rights of survivorship. [The plaintiff] will also receive the proceeds from [the decedent's] annuity currently held by American Legacy in the amount of $240,500. The Webster Bank checking account, presently held jointly by [the plaintiff] and [the decedent], will become hers with a guarantee of $100,000 upon his death."

[4] In her operative complaint, the plaintiff relied on the alleged infrequency of her communications with the decedent to support her argument that the decedent's departure from the Stamford home was involuntary. The plaintiff further relied on the purported content of an April 19, 2014 telephone call between the plaintiff and the decedent, in which the decedent allegedly ended the conversation by saying, "I have to go—they are coming." The defendants produced evidence to the effect that the decedent had the ability to communicate with the plaintiff during this time, as well as other evidence to the effect that the decedent's departure from the Stamford home was voluntary.

[5] The decedent had designated Slater as executor under the 2014 will. As a result of the anticipated delay in administering the decedent's estate, the Probate Court, *Caruso, J.*, appointed Slater as temporary administrator.

[6] In the present action, the plaintiff testified in her deposition that the basis for her claim in the Probate Court was that Slater exercised undue influence over the decedent "[b]ecause he was giving [the decedent] advice." The plaintiff further testified that Joshua Solon exercised undue influence over the decedent because he "arrange[d] the appointment" with Tuthill pertaining to the decedent's estate plan and attended that appointment with the decedent.

[7] General Statutes § 45a-251 provides: "A will or codicil shall not be valid to pass any property unless it is in writing, subscribed by the testator and attested by two witnesses, each of them subscribing in the testator's presence; but any will executed according to the laws of the state or country where it was executed may be admitted to probate in this state and shall be effectual to pass any property of the testator situated in this state."

[8] General Statutes § 45a-250 provides: "Any person eighteen years of age or older, and of sound mind, may dispose of his estate by will."

[9] The complaint in the present action was nearly identical to the complaint

filed in the first action but for the fact that, in the first action, the plaintiff also had sued Slater in his fiduciary capacity as administrator of the decedent's estate.

[10] The court denied the motions for summary judgment with respect to counts three through five of the plaintiff's complaint, finding that neither res judicata nor collateral estoppel applied to those claims and that the defendants' argument that there was no evidence to support the emotional distress and negligence claims was premature.

The plaintiff filed a motion to reargue the defendants' motions for summary judgment with respect to counts one and two of the plaintiff's complaint. In a memorandum of decision dated April 2, 2018, the court denied the plaintiff's motion to reargue.

The plaintiff subsequently withdrew counts three through five as against Slater and Joshua Solon, respectively.

[11] On appeal, the defendants argue that the trial court's judgment should be affirmed on the alternative ground that counts one and two of the plaintiff's complaint are barred by the doctrine of res judicata on the basis of the Probate Court's admission of the 2014 will over the objections of the plaintiff. Because we affirm the court's dismissal of counts one and two on the ground of collateral estoppel, we need not address the defendants' alternative ground for affirmance.

[12] On May 13, 2019, the plaintiff filed an appeal from the court's rendering of summary judgment in favor of Slater on counts one and two. On May 31, 2019, the plaintiff filed an appeal from the court's rendering of summary judgment in favor of Joshua Solon on counts one and two, which was treated as an amended appeal by this court.

[13] We note that the plaintiff blurs the distinction between the doctrine of res judicata, which concerns claim preclusion, and the doctrine of collateral estoppel, an aspect of res judicata that concerns issue preclusion. See *Heussner* v. *Day, Berry & Howard, LLP*, 94 Conn. App. 569, 573–74, 893 A.2d 486 ("The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel means simply that when an *issue of ultimate fact* has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (Emphasis added; internal quotation marks omitted.)), cert. denied, 278 Conn. 912, 899 A.2d 38 (2006).

———————————————