******************************************************

    The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

    All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

    The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LINDA YOFFE SOLON *v*. JOSEPH M.
SLATER ET AL.
(SC 20597)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker and Keller, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants, C, the son of
the plaintiff's deceased husband (M), and S, M's longtime friend and
attorney, for, inter alia, tortious interference with contractual relations,
in connection with the plaintiff and M's antenuptial agreement, and
tortious interference with the plaintiff's right of inheritance from M's
estate. The antenuptial agreement provided the plaintiff with a life estate
in certain real property in Stamford, where the plaintiff and M had
resided. Six months after their marriage, M was diagnosed with cancer.
Before undergoing palliative surgery, M signed his first will, which was
prepared by S. The plaintiff alleged that, the day after signing that will,
M gave her a handwritten note memorializing certain discussions that
they purportedly had had about amending the antenuptial agreement
to provide that the plaintiff be left certain of M's assets, including the
Stamford home and two bank accounts, upon M's death. The plaintiff
and M both engaged family law attorneys to represent them in negotiating
the changes to the antenuptial agreement, but they never amended the
agreement. After M's surgery, M executed a second will, which was
prepared by an estate planning attorney. The second will did not reflect
the proposed changes to the antenuptial agreement but, instead, placed
M's residuary estate into a revocable trust that benefited his two adult
children from a prior marriage, including C. Thereafter, M left the Stam-
ford home he shared with the plaintiff and went to stay at his former
wife's home, where M remained until his death. Thereafter, S submitted
an application to the Probate Court for the admission of the second
will. The plaintiff objected on the grounds that, when M executed the
second will, he lacked testamentary capacity and was under the defen-
dants' undue influence. The Probate Court admitted the second will to
probate, finding that there was insufficient evidence to support either
of the plaintiff's objections. Thereafter, the plaintiff commenced the
present action, alleging that M had executed the second will while under
the defendants' influence and control and that they prevented M from
amending the antenuptial agreement by moving him to his former wife's
home and keeping him apart from the plaintiff. The defendants moved
for summary judgment, contending that all of the plaintiff's claims were
barred by the doctrines of res judicata and collateral estoppel because
they previously had been adjudicated and decided by the Probate Court.
The trial court rejected the res judicata defense but concluded that the
doctrine of collateral estoppel barred the plaintiff's claims for tortious
interference with contractual relations and the right of inheritance.
Accordingly, the trial court granted the defendants' motions and ren-
dered judgment in their favor. The Appellate Court affirmed the trial
court's judgment, concluding that the plaintiff's tortious interference
claims relied on the same factual predicate offered in support of the
undue influence claim she asserted in the Probate Court and that,
because the Probate Court necessarily and actually determined that the
defendants' allegedly tortious conduct in connection with M's execution
of his second will did not rise to a level of impropriety such as to affect
the disposition of M's estate, the plaintiff was collaterally estopped from
raising her tortious interference claims in the present action. On the
granting of certification, the plaintiff appealed to this court. *Held*:

1. The plaintiff's tortious interference with inheritance claim, but not her
tortious interference with contractual relations claim, was barred by
the doctrine of collateral estoppel, and, accordingly, this court reversed
the Appellate Court's judgment in part and remanded the case for further
proceedings on the plaintiff's tortious interference with contractual rela-
tions claim:

a. The plaintiff's tortious interference with contractual relations claim was not barred by the doctrine of collateral estoppel, as the Probate Court did not actually decide whether the defendants tortiously interfered with the amendment of the antenuptial agreement:

The basis of the plaintiff's claim for tortious interference with contractual relations was that the defendants interfered with the amendment of the antenuptial agreement, and thereby prevented the plaintiff from inheriting certain of M's assets, by using their undue influence to prevent M from reducing the renegotiated terms of the agreement to writing, but the sole issue in the Probate Court was whether to admit M's second will to probate over the plaintiff's objections regarding M's testamentary capacity and the defendants' undue influence with regard to that specific legal instrument, and the Probate Court did not make any factual findings regarding the defendants' conduct pertaining to the proposed changes to the antenuptial agreement or specifically decide whether the defendants interfered with M and the plaintiff's purported plans to amend the antenuptial agreement and, if so, whether the interference was accomplished by improper means.

Although the facts underlying the plaintiff's undue influence claim in the Probate Court and her tortious interference with contractual relations claim in the trial court overlapped to some degree, insofar as they both were predicated on the defendants' allegedly wrongful conduct with respect to certain of M's assets during the same general time period, the issue in the probate proceedings, namely, whether the defendants exercised undue influence with respect to M's execution of his second will, was not identical to the issue in the trial court proceedings, namely, whether the defendants also exercised undue influence with respect to the amendment of the antenuptial agreement.

Moreover, the record reflected that M's execution of his second will and the negotiation of the proposed amendments to the antenuptial agreement were not inextricably intertwined but, instead, were treated as separate and distinct legal transactions, as the deposition testimony of the estate planning attorney concerning M's testamentary and mental capacity was admitted in the probate proceedings but the parties proffered no evidence in those proceedings regarding the negotiation of the proposed amendments to the antenuptial agreement other than the plaintiff's own testimony and her production of M's handwritten note, and, although the Probate Court actually and necessarily found that M's second will expressed M's actual testamentary desires, that court made no factual findings, and was not required to make any findings, regarding the issue of M's contractual desires, namely, whether M intended to leave the plaintiff certain assets via an amended antenuptial agreement and, if so, whether the defendants tortiously interfered with M and the plaintiff's purported plans to amend the antenuptial agreement.

b. The plaintiff's claim for tortious interference with the right of inheritance was barred by the doctrine of collateral estoppel because, even if this state recognizes that cause of action, the Probate Court actually and necessarily determined that M expressed his actual testamentary desires when he executed his second will:

The plaintiff's claim for tortious interference with the right of inheritance was premised on the defendants' knowledge of the plaintiff's expected inheritance of certain of M's assets and the defendants' allegedly tortious interference with that expected inheritance, but, by admitting M's second will to probate over the plaintiff's specific objections, the Probate Court determined that M expressed his actual testamentary desires when he executed his second will and that there was no tortious conduct by the defendants with respect to the plaintiff's inheritance insofar as they had not exercised undue influence to overbear M's free agency regarding the disposition of his property.

Even though the Probate Court lacked jurisdiction to adjudicate the plaintiff's claim for tortious interference with the right of inheritance, application of the doctrine of collateral estoppel depends not on a plaintiff's ability to assert an identical claim in the prior proceeding but on the actual resolution of an identical issue in the prior proceeding following a full and fair opportunity to litigate that issue, and, because the plaintiff did not allege that the procedures in the Probate Court were not compara-

ble in quality and extensiveness to the procedures in the trial court or challenge the Probate Court's competence to make a final determination on the issue of whether M expressed his actual testamentary desires when he executed his second will, the plaintiff was collaterally estopped from litigating her claim for tortious interference with the right of inheritance in the trial court.

2. The Appellate Court's judgment could not be affirmed on the alternative ground that the plaintiff's tortious interference with contractual relations claim was barred by the doctrine of res judicata, as the plaintiff lacked an adequate opportunity to litigate that claim in the Probate Court:

The Probate Court, as a court of limited jurisdiction as prescribed by statute, does not have jurisdiction to adjudicate common-law tort claims or to award compensatory damages against individual defendants as a remedy for their tortious conduct, and, accordingly, the plaintiff lacked an adequate opportunity to litigate fully her claim for tortious interference with contractual relations in the Probate Court.

Argued September 8, 2022—officially released January 3, 2023*

*Procedural History*

Action to recover damages for, inter alia, tortious interference with contractual relations, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Povodator, J.*, granted the defendants' motions for summary judgment with respect to certain counts of the complaint; thereafter, the plaintiff withdrew the remaining counts of the complaint, and the court, *Povodator, J.*, rendered judgment for the defendants, from which the plaintiff appealed to the Appellate Court, *Alvord, Elgo* and *Alexander, Js.*, which affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Reversed in part*; *further proceedings*.

*Eric D. Grayson*, for the appellant (plaintiff).

*William N. Wright*, with whom, on the brief, was *John W. Cannavino*, for the appellees (defendants).

*Opinion*

ECKER, J. This appeal requires us to decide the scope of the preclusive effect, in a subsequent tort action in the Superior Court, of an unappealed Probate Court decree admitting a will to probate. The plaintiff, Linda Yoffe Solon, filed the present lawsuit against the defendants, Joseph M. Slater and Joshua Solon, alleging that they tortiously interfered with her contractual relations and right of inheritance by exercising undue influence over her husband, Michael Solon (decedent), with respect to two different legal instruments, a proposed amendment to an antenuptial agreement and a testamentary will. The trial court rendered summary judgment in favor of the defendants, concluding in pertinent part that both of the plaintiff's tortious interference claims were barred by the doctrine of collateral estoppel because the Probate Court previously had admitted the decedent's will to probate after rejecting the plaintiff's claim that the decedent executed the will as a result of the defendants' undue influence. The Appellate Court affirmed the judgment of the trial court. See *Solon* v. *Slater*, 204 Conn. App. 647, 665, 253 A.3d 503 (2021).

The issue before us is whether both of the plaintiff's tortious interference claims in her civil tort action are barred by either the doctrine of collateral estoppel, as the courts below concluded, or the doctrine of res judicata, which the defendants have raised as an alternative ground for affirmance. We conclude that neither preclusion doctrine bars the plaintiff from litigating her tortious interference with contractual relations claim, which relates to the proposed amended antenuptial agreement, because the Probate Court did not actually or necessarily determine whether the defendants tortiously interfered with that contract and the plaintiff lacked an opportunity to litigate her claim in the Probate Court. We arrive at a different conclusion with respect to the plaintiff's tortious interference with her right of inheritance claim because the Probate Court actually and necessarily determined that the defendants had not tortiously interfered with the execution, alteration, or revocation of the will admitted to probate, and the plaintiff therefore is collaterally estopped from relitigating that claim. Accordingly, we reverse the judgment of the Appellate Court in part and remand the case for further proceedings on the plaintiff's tortious interference with contractual relations claim.

I

FACTS AND PROCEDURAL HISTORY

The Appellate Court opinion sets forth the following facts and procedural history. "The plaintiff and the decedent first met in December, 2010. In May, 2013, they were married. At the time of the marriage, the decedent had two adult children from a previous marriage: a son, Joshua Solon, and a daughter, Carly Solon.

Slater was both a longtime friend and attorney of the decedent.

"On or about May 22, 2013, just prior to getting married, the plaintiff and the decedent executed an antenuptial agreement. The antenuptial agreement provided, inter alia, for the plaintiff to have a life estate interest in real property located at 49 Alexandra Drive in Stamford (Stamford home). The antenuptial agreement further provided that the decedent's estate would be responsible for paying the mortgage, property taxes, utilities, and associated expenses and repairs at the Stamford home.

"In November, 2013, approximately six months after the plaintiff's marriage to the decedent, the decedent was diagnosed with pancreatic cancer. The prognosis was that he had less than one year left to live. The decedent elected a surgical course of treatment. Prior to surgery, he met with Slater concerning the preparation of a last will and testament. On November 8, 2013 the decedent signed a last will and testament prepared by Slater (2013 will).

"After undergoing the surgery, the decedent met with an estate planning attorney, Howard S. Tuthill III, concerning his estate plan. On February 6, 2014, Tuthill prepared a second will for the decedent (2014 will).

"Shortly after the decedent's early November diagnosis, the plaintiff and the decedent discussed amending their antenuptial agreement. The plaintiff alleged that the decedent provided her with a handwritten note dated November 9, 2013 (November note), the day after the decedent executed the 2013 will, which purportedly memorialized the intended changes to the antenuptial agreement. The November note indicated: 'I want to leave the house to [the plaintiff]—[the plaintiff] will get the 200k plus annuity, [the plaintiff] will get [the] Etrade acct, [the plaintiff] will get approx. 90–110k dollars.'

"Thereafter, in early 2014, the decedent engaged Attorney Edward Nusbaum to represent him in negotiations pertaining to modifying the antenuptial agreement. The plaintiff was represented in the negotiations by Attorney Arnold Rutkin. Although Nusbaum and Rutkin discussed the proposal set forth in the November note, the negotiations ultimately failed, and the plaintiff and the decedent never amended their antenuptial agreement.

"On March 13, 2014, the decedent left the Stamford home [he shared with the plaintiff] to reside at the home of his former wife, Lori Solon, on Long Island (Long Island home). The plaintiff characterized his departure as 'essentially a kidnapping' by the defendants, such that the decedent was 'forcibly removed' from the Stamford home, in the 'complete control and custody' of the defendants, and 'subject to undue influence and manipulation' by them. The defendants produced evi-

dence to the effect that the decedent's departure from the Stamford home was volitional.

"From March 13, 2014, until the date of his death, the decedent resided at the Long Island home. During that time, he communicated with the plaintiff on a few occasions by [email], text message, and telephone; these communications were primarily initiated by the plaintiff. The decedent died on April 19, 2014.

"On or about June 4, 2014, Slater submitted an application to the Probate Court for the admission of the 2014 will. The plaintiff [objected] to its admission, claiming that the decedent executed the 2014 will under the defendants' undue influence and also that the decedent had lacked the testamentary capacity to execute the documents.

"On October 6, 2014, while the Probate Court proceedings were . . . pending, the plaintiff commenced an action in the Superior Court against the defendants, both individually and in Slater's fiduciary capacity as administrator of the decedent's estate (first action). *Solon* v. *Slater*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-14-6023538-S (May 12, 2015). Her complaint set forth the following five counts, all sounding in tort: (1) tortious interference with contractual relations; (2) tortious interference with [the] right of inheritance; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; and (5) negligence. Specifically, the plaintiff alleged that the defendants, by way of manipulation, prevented the decedent from amending the antenuptial agreement or revising his will for the benefit of the plaintiff. As relief, the plaintiff sought the total value of the assets of the decedent's estate that were listed in the November note: $850,000, representing the value of the title to the Stamford home; $240,500, representing the proceeds of an annuity held by the decedent; $100,000 from an E-Trade account held by the decedent; [and] $100,000 from the decedent's bank account . . . ." (Footnotes omitted.) *Solon* v. *Slater*, supra, 204 Conn. App. 649–52. Additionally, the plaintiff sought "$5,000,000, representing the decedent's 50 percent ownership interest in his family's business, B&F Electric Motors, Inc. . . ."[1] Id., 652.

"The defendants moved to dismiss the first action on the ground that the Probate Court had not yet ruled on the admission of the 2014 will and, therefore, [that] there was no justiciable controversy. By memorandum of decision dated May 12, 2015, the court, *Heller, J.*, dismissed the first action against the defendants for lack of subject matter jurisdiction. The court explained that the Solon . . . assets were subject to the jurisdiction of the Probate Court: 'All of the property that the plaintiff argues would have passed to her [upon] the decedent's death, but for the defendants' improper conduct, is presently subject to the jurisdiction of the Pro-

bate Court. . . . [S]hould the Probate Court admit the . . . 2014 will to probate over the plaintiff's objection, finding that the decedent was not subject to the defendants' undue influence, the Probate Court's order will be a final judgment for res judicata purposes, if no appeal is taken, and the plaintiff's claims in this action will be barred.'

"On June 17, 2015, the Probate Court, *Fox, J.*, held an evidentiary hearing concerning the plaintiff's objections to the admission of the 2014 will. On August 20, 2015, the Probate Court issued a decree admitting the 2014 will to probate over the plaintiff's objections (Probate Court decree). The Probate Court first determined that 'the will was properly executed in accordance with [General Statutes] § 45a-251 and that there [was] insufficient evidence to show that the decedent did not have the testamentary capacity to make the subject will at the time of its execution in accordance with [General Statutes] § 45a-250.' . . . Next, the Probate Court determined that 'there [was] insufficient evidence to show that the disposition of the decedent's estate in his [2014 will] was a result of undue influence.' The plaintiff did not appeal [from] the Probate Court decree.

"In making its determination, the Probate Court considered the following evidence with respect to the decedent's estate planning. The decedent's 2014 will pours his residuary estate into a revocable trust, naming his children, Joshua Solon and Carly Solon, as the sole beneficiaries. The decedent provided for the plaintiff under the antenuptial agreement. The plaintiff testified that she knew that the decedent was reviewing estate planning documents with his attorney in the period from January 14 through February 6, 2014. She was working during the day and, therefore, did not accompany him to these meetings. However, Joshua Solon and Slater took the decedent to four or five meetings that he had with Tuthill.

"The Probate Court considered the following evidence with respect to the decedent's marriage to the plaintiff and their antenuptial agreement. The decedent and the plaintiff first met in December, 2010, and then married on May 23, 2013. The day before the marriage, the decedent and the plaintiff entered into an antenuptial agreement. The plaintiff testified that the decedent repeatedly told her he would ' "take care of her for life," ' and that he intended to change the antenuptial agreement to give her, inter alia, the Stamford home as well as two generous bank accounts. To support her allegations, the plaintiff provided the Probate Court with the November note. The plaintiff testified that, in January and February, 2014, she and the decedent had consulted with [family law] attorneys to amend their antenuptial agreement to conform to the terms of the November note. This amended agreement, however, never was finalized.

"The Probate Court considered the following evidence with respect to the decedent's diagnosis, treatment, and overall health. The plaintiff testified that, in November, 2013, six months after her marriage to the decedent, the decedent received the diagnosis of late stage pancreatic cancer. The decedent had palliative surgery, after which he was prescribed strong pain alleviating drugs. The plaintiff contended that the decedent was very sick and heavily medicated.

"The Probate Court considered the following evidence with respect to the plaintiff's and the defendants' care of and visitation with the decedent. Prior to March 13, 2014, the plaintiff testified that Joshua Solon often took care of the decedent during the day when the plaintiff was at work. Slater also frequently visited the decedent at the Stamford home. The plaintiff further testified that, on March 13, 2014, when she came home from work, the decedent was gone. Joshua Solon and Carly Solon had taken him from the Stamford home. The plaintiff stated that she was not allowed to see the decedent or to ' "say goodbye." ' Joshua Solon and Carly Solon did not inform her of the decedent's death on April 19, 2014.

"On September 2, 2015, the plaintiff commenced the present action. [Her subsequently] revised complaint (operative complaint) . . . set forth the same five tort counts contained in the first action: (1) tortious interference with contractual relations; (2) tortious interference with [the] right of inheritance; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; and (5) negligence.[2] Specifically, with respect to counts one and two of the plaintiff's operative complaint, the plaintiff alleged that the decedent 'was preparing either by [amendment to the antenuptial agreement] or by will, to leave [the plaintiff the Solon assets].' The plaintiff maintained that the decedent's 2014 will was executed 'under the influence and control' of the defendants. The plaintiff further maintained that the reason that the antenuptial agreement was not modified was because, on March 13, 2014, the defendants, 'acting individually and in concert, forcibly removed and essentially kidnapped [the decedent] from the marital home . . . so [that the decedent] would be in their complete control and custody and under their influence and manipulation.' The plaintiff asserted that the defendants, '[b]y using their undue influence and manipulation prior to the time [that] they took [the decedent] from [the Stamford] home and thereafter, while he was kept at an undisclosed location . . . and incommunicado from [the plaintiff], the defendants . . . interfered with [her] contractual relations and expectancies, in that the terms of the [amendments to the antenuptial agreement], which had been agreed to, were never reduced to writing.'

"On April 20, 2017, the defendants [each] moved for

summary judgment on the grounds that the plaintiff's claims were barred by the doctrines of res judicata and collateral estoppel because those claims had been 'previously adjudicated and decided by the Probate Court.' " (Footnote added; footnotes omitted.) *Solon* v. *Slater*, supra, 204 Conn. App. 652–56. The trial court, *Povodator*, *J.*, first rejected the defendants' res judicata defense on the ground that "[t]he Probate Court is a court of limited jurisdiction, such that it [did] not have authority to entertain any of the [tort] claims being asserted in this lawsuit (or the [first action])." Turning to the defendants' collateral estoppel defense, the court determined that the plaintiff's intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence claims were not barred because the Probate Court's determination regarding the lawfulness of the defendants' conduct was not dispositive of those claims. The court observed that, "[although] an underlying act may be lawful, the manner in which it was accomplished could, at least possibly, constitute an intentional infliction of emotional distress."

The trial court arrived at a contrary conclusion, however, with respect to whether collateral estoppel barred the plaintiff's tortious interference with contractual relations and tortious interference with the right of inheritance claims. The court reasoned that these claims "are dependent on a level of impropriety that is foreclosed by the Probate Court order" in light of the Probate Court's finding that the defendants had not engaged in any "[wrongful] conduct directed to the [antenuptial] agreement and [the] operative will." The Probate Court's determination that the 2014 will "was not the product of undue influence or lack of testamentary capacity," combined with "the interrelationship between the [antenuptial] agreement and the [2014] will with respect to the ultimate disposition of the decedent's estate," led the court to conclude that "the [plaintiff's] claim of some wrongfulness in [the] bringing about [of] that result [could not] survive the determination by the Probate Court that the will properly reflected the final wishes of the decedent." Accordingly, the court granted the defendants' motions for summary judgment with respect to the first two counts of the plaintiff's operative complaint.

The plaintiff appealed from the judgment of the trial court to the Appellate Court,[3] contending that her tortious interference with contractual relations and the right of inheritance claims were not barred by the doctrine of collateral estoppel. *Solon* v. *Slater*, supra, 204 Conn. App. 659. The Appellate Court disagreed on the ground that the plaintiff's tortious interference claims presented the same issues and relied "on the same factual predicate that she [had] offered in support of her undue influence claim in [the] Probate Court." Id., 663. Because the Probate Court necessarily and actually determined that the defendants' allegedly tortious con-

duct with respect to the 2014 will "did not rise to a level of impropriety by the defendants, of whatever character, such as to affect the disposition of the decedent's estate"; (internal quotation marks omitted) id., 662; the Appellate Court held that the plaintiff was collaterally estopped from raising her tortious interference claims in the present action. Id., 665. In light of that conclusion, the Appellate Court did not address the defendants' argument that res judicata provided an alternative ground for affirmance. Id., 657 n.11.

In this certified appeal,[4] the plaintiff contends that her tortious interference claims are not barred by the doctrine of collateral estoppel because the Probate Court lacked jurisdiction to adjudicate her tort claims and did not actually or necessarily determine whether the defendants tortiously interfered with the proposed amendment to the antenuptial agreement. The plaintiff further contends that the doctrine of collateral estoppel does not apply because the burden of proof and legal standards governing the undue influence claim adjudicated in the Probate Court are not identical to those applicable to the tortious interference claims in the present case.

The defendants respond that the factual predicate of both the plaintiff's tortious interference claims is identical to the factual predicate of the undue influence claim that was raised and decided in the Probate Court. The defendants contend that the Probate Court had subject matter jurisdiction over the antenuptial agreement as part of its power to adjudicate the title to the Solon assets pursuant to General Statutes § 45a-98 (a) (3)[5] and argue that the Probate Court necessarily determined that the plaintiff was not entitled to the Solon assets because she failed to prove that the defendants had manipulated the decedent or had engaged in any wrongful conduct. Alternatively, the defendants argue that the plaintiff's tortious interference claims are barred by the doctrine of res judicata because the Probate Court had jurisdiction to decide whether the plaintiff was entitled to the Solon assets and the tortious interference claims are identical to the undue influence claim adjudicated in the Probate Court.

II

PRECLUSIVE EFFECT OF PROBATE
COURT DECREE

Probate Court decrees are final judgments for purposes of collateral estoppel and res judicata. See, e.g., *Corcoran* v. *Dept. of Social Services*, 271 Conn. 679, 689, 859 A.2d 533 (2004); *Gaynor* v. *Payne*, 261 Conn. 585, 596, 804 A.2d 170 (2002); *Heussner* v. *Day, Berry & Howard, LLP*, 94 Conn. App. 569, 576, 893 A.2d 486, cert. denied, 278 Conn. 912, 899 A.2d 38 (2006); see also General Statutes § 45a-24.[6] Whether the plaintiff's claims for tortious interference with contractual rela-

tions and the right of inheritance are barred by the doctrines of collateral estoppel or res judicata presents a question of law, over which our review is plenary. See, e.g., *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 601, 922 A.2d 1073 (2007).

The doctrines of collateral estoppel and res judicata, also known as issue preclusion and claim preclusion, respectively, "have been described as related ideas on a continuum." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 373, 727 A.2d 1245 (1999). Both doctrines share common purposes, namely, to "protect the finality of judicial determinations, [to] conserve the time of the court, and [to] prevent wasteful litigation . . . ." (Citation omitted; internal quotation marks omitted.) Id. Despite their "conceptual closeness"; *Connecticut Natural Gas Corp.* v. *Miller*, 239 Conn. 313, 324 n.8, 684 A.2d 1173 (1996); the two doctrines "are regarded as distinct." *Weiss* v. *Weiss*, 297 Conn. 446, 459, 998 A.2d 766 (2010). The doctrine of collateral estoppel prevents "a party from relitigating issues and facts [that have been] actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them [on] a *different claim*"; (emphasis added; internal quotation marks omitted) *Rocco* v. *Garrison*, 268 Conn. 541, 555, 848 A.2d 352 (2004); whereas the doctrine of res judicata prevents a party from relitigating the *same claim* following a final judgment on the merits, "regardless of what additional or different evidence or legal theories might be advanced in support of it." (Internal quotation marks omitted.) *Wheeler* v. *Beachcroft, LLC*, 320 Conn. 146, 157–58, 129 A.3d 677 (2016).

## A

### Collateral Estoppel

We first address whether the plaintiff's tortious interference with contractual relations and the right of inheritance claims are barred by the doctrine of collateral estoppel. "For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . .

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent [on] the determination of the issue, the parties may relitigate the issue in a subsequent action. . . . Before collateral estoppel applies [however] there must be an *identity of issues* between the prior and subsequent proceedings. To invoke collateral estoppel the issues sought to be litigated in the new

proceeding must be *identical* to those considered in the prior proceeding. . . . Further, an overlap in issues does not necessitate a finding of identity of issues for the purposes of collateral estoppel." (Citations omitted; emphasis in original; internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 739–40, 183 A.3d 611 (2018).

To determine whether the issues in the present case are identical to the issues decided by the Probate Court, we compare the facts underlying each of the plaintiff's tortious interference claims with the facts actually and necessarily found by the Probate Court in its determination of the will contest. See *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 297, 596 A.2d 414 (1991) ("[t]o establish whether collateral estoppel applies, the court must determine what facts were necessarily determined in the first trial, and must then assess whether the [party] is attempting to relitigate those facts in the second proceeding" (internal quotation marks omitted)); see also *Gladysz* v. *Planning & Zoning Commission*, 256 Conn. 249, 261, 773 A.2d 300 (2001) ("statements by a court regarding a nonessential issue are treated as merely dicta"). The defendants, as the parties who sought summary judgment on the basis of collateral estoppel, bore "the burden of showing that the issue [the] relitigation [of which they sought] to foreclose was actually decided in the first proceeding." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, supra, 248 Conn. 377.

1

The Plaintiff's Tortious Interference with Contractual Relations Claim Is Not Barred by the Doctrine of Collateral Estoppel

In the operative complaint, the plaintiff alleged that the defendants tortiously interfered with the amendment of the antenuptial agreement, and thereby prevented her from obtaining ownership of the Solon assets, "[b]y using their undue influence and manipulation prior to the time they took [the decedent] from his marital home and, thereafter, while he was kept at an undisclosed location—and incommunicado from [the plaintiff]"—to prevent him from reducing the terms of the agreement to writing.[7] (Emphasis omitted.) See, e.g., *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 621, 99 A.3d 1079 (2014) ("[t]he pleadings determine which facts are relevant and frame the issues for summary judgment proceedings or for trial"). To prevail on her tortious interference with contractual relations claim, the plaintiff must prove "(1) the existence of a contractual or beneficial relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct." (Internal quotation marks omitted.) *Appleton*

v. *Board of Education*, 254 Conn. 205, 212–13, 757 A.2d 1059 (2000). An interference is tortious if it involves "fraud, misrepresentation, intimidation or molestation . . . [or if] the defendant[s] acted maliciously. . . . The burden is on the plaintiff to plead and prove at least some improper motive or improper means . . . on the part of the defendants." (Citations omitted; internal quotation marks omitted.) *Solomon* v. *Aberman*, 196 Conn. 359, 365, 493 A.2d 193 (1985); see *American Diamond Exchange, Inc.* v. *Alpert*, 101 Conn. App. 83, 90–94, 920 A.2d 357 (defendant was liable for tortious interference with business expectancy because she acted with improper motive and employed improper means to divert customers away from plaintiff), cert. denied, 284 Conn. 901, 931 A.2d 261 (2007). "Stated simply, to substantiate a claim of tortious interference . . . there must be evidence that the interference resulted from the defendant's commission of a tort." (Internal quotation marks omitted.) *Biro* v. *Hirsch*, 62 Conn. App. 11, 21, 771 A.2d 129, cert. denied, 256 Conn. 908, 772 A.2d 601 (2001).

The parties dispute whether the Probate Court actually and necessarily resolved the issue of the defendants' allegedly tortious interference with the amendment of the antenuptial agreement when it found that "the disposition of the decedent's estate in his [2014 will] was [not] a result of undue influence."[8] The Appellate Court agreed with the defendants that it did. See *Solon* v. *Slater*, supra, 204 Conn. App. 665. We conclude otherwise. The flaw in the Appellate Court's reasoning is that the plaintiff's claim of tortious interference with the amendment of the antenuptial agreement is predicated on different (albeit partly overlapping) conduct relating to a different legal instrument, not the 2014 will. The sole issue in the Probate Court was whether to admit the decedent's 2014 will to probate. Notably, the plaintiff did not challenge the validity of the preexisting antenuptial agreement or ask the Probate Court to determine the right or title to any of the Solon assets pursuant to § 45a-98 (a) (3).[9] Instead, she objected to the admission of the decedent's 2014 will to probate, claiming that (1) the decedent lacked the testamentary capacity to execute the will, and (2) the will was the product of the defendants' undue influence. Following an evidentiary hearing, the Probate Court rejected both of these objections, finding that there was "insufficient evidence to show that the decedent did not have the testamentary capacity to make the [2014] will at the time of its execution" or that "the disposition of the decedent's estate in his [2014 will] was a result of undue influence."

The Probate Court made no factual findings regarding the defendants' conduct pertaining to the proposed amendment of the antenuptial agreement. Thus, the Probate Court did not decide whether the defendants interfered with the consummation of an amended agreement and,

if so, whether the interference was accomplished by improper means, such as manipulation or undue influence. Because the Probate Court did not actually decide whether the defendants tortiously interfered with the execution of an amended antenuptial agreement, we conclude that the plaintiff's tortious interference with contractual relations claim is not barred by the doctrine of collateral estoppel. See *Weizmann Institute of Science* v. *Neschis*, 229 F. Supp. 2d 234, 249 (S.D.N.Y. 2002) (collateral estoppel effect of prior probate action did "not preclude the [plaintiffs] from raising issues and challenging those documents, if any, that were not part of the probate proceeding"); *Arroyo-Graulau* v. *Merrill Lynch Pierce, Fenner & Smith, Inc.*, 135 App. Div. 3d 1, 4, 19 N.Y.S.3d 221 (2015) (plaintiff's claims regarding delivery of estate account assets were not barred by collateral estoppel effect of prior Probate Court judgment because sole issue in prior action "was whether the 2008 will should be admitted to probate"); *Watch Tower Bible & Tract Society of Pennsylvania* v. *Fifth Third Bank*, Docket No. 96403, 2011 WL 4600795, *4 (Ohio App. October 6, 2011) (plaintiff's claims for negligence, conversion, breach of contract, and tortious interference with expectancy were not barred by doctrine of collateral estoppel, even though "the crux of the [P]robate [C]ourt case" was similar to plaintiff's tort claims, because plaintiff's claim that "the intended bequest . . . was not consummated due to the [defendant's] negligence" was different from issues litigated in prior Probate Court action).

In arriving at this conclusion, we recognize that there is some overlap between the facts underlying the plaintiff's undue influence claim in the Probate Court and her tortious interference with contractual relations claim in the present case, because both claims are predicated on the defendants' allegedly wrongful conduct during the same general time period regarding the Solon assets. An overlap in issues is not enough to trigger application of the doctrine of collateral estoppel; the doctrine becomes operative only if the issue decided in the prior proceeding and the issue presented in the subsequent proceeding are *identical*. See *Corcoran* v. *Dept. of Social Services*, supra, 271 Conn. 690 (administrative action regarding plaintiff's entitlement to Medicaid benefits was not collaterally estopped by Probate Court decree finding that trust assets were held in special needs trust "because the issue decided by the Probate Court, namely, that the trust was not available to the plaintiff's *creditors*, is not identical to the issue before the hearing officer, namely, whether the trust constituted an asset available to the *plaintiff*" (emphasis in original)); *Peterson* v. *iCare Management, LLC*, 203 Conn. App. 777, 793, 250 A.3d 720 (2021) (plaintiffs' nuisance claims were not barred by collateral estoppel effect of prior land use action involving that defendants' use of property did not violate zoning regulations

because, in prior action, "the court . . . was not asked to resolve, and did not resolve, the [issue] of whether the defendants' operation at [the property] constituted a nuisance for which the plaintiffs . . . would be entitled to damages"); *Wiacek Farms, LLC* v. *Shelton*, 132 Conn. App. 163, 171, 30 A.3d 27 (2011) (plaintiff's tortious interference with business expectancy and antitrust claims were not barred by collateral estoppel effect of prior action for injunctive relief involving defendant's allegedly unlawful taking of property because "[t]he issue of whether the defendant caused the plaintiff monetary damages by improperly interfering with its business expectations [was] sufficiently different [from] the issue presented for determination in the injunction proceeding"), cert. denied, 303 Conn. 918, 34 A.3d 394 (2012). Although it might be inferred that, if the defendants did not exercise undue influence with respect to the 2014 will, they also did not exercise undue influence with respect to the amendment of the antenuptial agreement, "the doctrine of collateral estoppel [cannot be predicated] on a mere inference." *Corcoran* v. *Dept. of Social Services*, supra, 695. As we explained in *Corcoran*, "the addition of an inferential step is sufficient to negate the required identity of the issues." Id.

To illustrate the point, it takes little imagination to conceive of a plausible hypothetical situation in which the defendants might have accomplished their allegedly wrongful objective by engaging in tortious conduct with respect to the proposed amendment to the antenuptial agreement while engaging in no improprieties with respect to the 2014 will. The defendant Joshua Solon was a residuary beneficiary under the 2014 will, and, as such, the value of his inheritance depended on what remained in the estate after the terms of the antenuptial agreement had been effectuated. Thus, even without any wrongdoing by the defendants in connection with the 2014 will, wrongful interference with the amendment to the antenuptial agreement alone would have resulted in the Solon assets passing to the trust beneficiaries as part of the residuary estate. Under this hypothetical scenario, the factual allegations that truly matter, those in support of the plaintiff's claim, are those relating to the allegedly tortious interference with the proposed amended antenuptial agreement—facts that have not yet been actually and necessarily adjudicated.

Moreover, the summary judgment record reflects that the execution of the 2014 will and the negotiation of the proposed amendment to the antenuptial agreement were not inextricably intertwined but, instead, were treated as separate and distinct legal transactions. During the amendment negotiations, the decedent was represented by a family law attorney, Nusbaum, whereas an estate planning attorney, Tutthill, prepared the 2014 will on behalf of the decedent. Tuthill's deposition testimony concerning the decedent's mental capacity and exercise of "free will" in connection with the execution

of the 2014 will was admitted into evidence at the Probate Court hearing, but it does not appear that the parties proffered any evidence from Nusbaum or the plaintiff's family law attorney regarding the negotiation of the proposed amendment to the antenuptial agreement in the Probate Court proceeding.[10] Indeed, there is no indication that the parties produced any evidence concerning the proposed amendment to the antenuptial agreement at all, other than the plaintiff's testimony in the Probate Court action that the decedent "intended to change the [antenuptial agreement] to give her the [Stamford home] as well as two generous bank accounts," and her production of the handwritten November note, which purportedly memorialized the intended changes to the antenuptial agreement. The defendants contend that these brief references make it "clear that the issue of the . . . negotiations [relating to the amendment of the antenuptial agreement] were before the Probate Court . . . ." We find no merit in this claim.

As we previously explained, the sole legal issue before the Probate Court was whether to admit the decedent's 2014 will to probate. To fulfill her burden of proof on her undue influence claim in the Probate Court; see footnote 11 of this opinion; the plaintiff testified that the decedent wanted to leave her the Solon assets after his death by means of an amended antenuptial agreement or by will. Given that the proposed amended antenuptial agreement never was consummated, the plaintiff alleged that, but for the undue influence exercised by the defendants, the decedent would have bequeathed her the Solon assets in his will. Although the Probate Court actually and necessarily found that the 2014 will "express[ed] [the decedent's] actual *testamentary* desires"; (emphasis added) *Bassford* v. *Bassford*, 180 Conn. App. 331, 355, 183 A.3d 680 (2018); it made no factual findings, and was not required to make any such findings, regarding the decedent's *contractual* desires, i.e., whether the decedent intended to leave the plaintiff the Solon assets via an amended antenuptial agreement and, if so, whether the defendants tortiously interfered with the consummation of the proposed amended agreement.[11] Accordingly, the plaintiff's tortious interference with contractual relations claim is not barred by the doctrine of collateral estoppel.

### 2

### The Plaintiff's Tortious Interference with the

### Right of Inheritance Claim Is Barred by

### the Doctrine of Collateral Estoppel

We next address whether the plaintiff's tortious interference with the right of inheritance claim is barred by the doctrine of collateral estoppel. As a preliminary matter, we note that the appellate courts of this state have not yet addressed whether tortious interference

with the right of inheritance is a cognizable cause of action. See, e.g., *Maguire* v. *Kane*, Docket No. FST-CV-20-6048808-S, 2021 WL 2302619, *2 (Conn. Super. May 18, 2021) ("no appellate court has yet addressed whether there is a cause of action for tortious interference with an expected inheritance"); see also *Wild* v. *Cocivera*, Docket No. HHD-CV-14-6050575-S, 2016 WL 3912348, *5 (Conn. Super. June 16, 2016) (citing cases and noting that, although "a minority of judges of the Superior Court has declined to recognize such a cause of action," most Superior Court judges have "recognized the viability of this cause of action"). Assuming, without deciding, that this state would recognize the cause of action, the essential elements of tortious interference with the right of inheritance are (1) an expected inheritance, (2) the defendant's knowledge of the expected inheritance, (3) the defendant's intent to interfere with the expected inheritance, (4) the interference was tortious, and (5) actual loss suffered by the plaintiff as a result of the defendant's tortious conduct.[12] See, e.g., *Reilley* v. *Albanese*, Docket No. AAN-CV-15-6018220-S, 2015 WL 9897691, *2–3 (Conn. Super. December 14, 2015); *Hart* v. *Hart*, Superior Court, judicial district of Windham, Docket No. CV-14-6007918-S (May 11, 2015) (60 Conn. L. Rptr. 399, 406); *DePasquale* v. *Hennessey*, Superior Court, judicial district of Hartford, Docket No. CV-10-6007472-S (August 27, 2010) (50 Conn. L. Rptr. 605, 607); see also 4 Restatement (Second), Torts, § 774B, p. 58 (1979) ("[o]ne who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift").

In the present case, the plaintiff's tortious interference with the right of inheritance claim is premised on the defendants' knowledge of the plaintiff's expected inheritance of the Solon assets and their allegedly tortious interference with that expected inheritance by "interference with the execution, alteration, or revocation of a will by [the decedent] . . . ."[13] The Probate Court determined, however, that there was no tortious conduct by the defendants with respect to the plaintiff's inheritance because the defendants had not exercised undue influence to overbear the decedent's free agency regarding the disposition of his property in the 2014 will. See footnote 8 of this opinion. By admitting the 2014 will to probate, over the plaintiff's objection, the Probate Court actually and necessarily decided that the 2014 will "express[ed] [the decedent's] actual testamentary desires." *Bassford* v. *Bassford*, supra, 180 Conn. App. 355; see *Hills* v. *Hart*, 88 Conn. 394, 401, 91 A. 257 (1914) ("If the will represented her wishes, and was such a disposition of her estate as she desired, and she was then of sound and disposing mind, it is her will and not another's. She has not done something against her will and contrary to her wishes. Her discretion and

judgment have not been controlled, and her free agency has not been overcome."). Because the Probate Court determined that the defendants' conduct regarding the testamentary disposition of the Solon assets was not tortious, we conclude that the plaintiff's tortious interference with the right of inheritance claim is barred by the doctrine of collateral estoppel. See *Kramer* v. *Freedman*, 272 So. 2d 195, 199 (Fla. App.) (malicious interference with inheritance claim was barred by collateral estoppel effect of prior probate proceeding regarding revocation of decedent's will), cert. discharged, 295 So. 2d 97 (Fla. 1973); *Mancuso* v. *Lahman*, Docket No. 1-17-0185, 2018 WL 4201754, *1 (Ill. App. August 30, 2018) ("[the] [t]rial court's [rendering] of summary judgment on [the tortious interference with inheritance] claims was properly based on [the collateral estoppel] doctrine, as [the] court in [the] prior will contest had already conclusively ruled that [the] defendant had not unduly influenced [the] drafting of [the] estate plan that disinherited [the] plaintiff"); *Youngblut* v. *Youngblut*, 945 N.W.2d 25, 36–37 (Iowa 2020) ("To prevail either on an undue influence claim or a [tortious interference] claim whe[n] the plaintiff is challenging conduct leading to a new will, the plaintiff must prove an outsider overcame the testator's independent will. . . . If the will reflects the true wishes of the testator, then no claim should lie, either for undue influence or tortious interference." (Citations omitted.)).

We reject the plaintiff's contention that her tortious interference with the right of inheritance claim is not barred by the doctrine of collateral estoppel on the ground that the Probate Court lacked jurisdiction to adjudicate her tort claim.[14] Unlike the doctrine of res judicata; see part II B of this opinion; the doctrine of collateral estoppel does not depend on the plaintiff's ability to assert an identical *claim* in the prior proceeding—it depends, instead, on the actual resolution of an identical *issue* in the prior proceeding following a full and fair opportunity for litigation.[15] It is not uncommon that "issue preclusion will be asserted in an action over which the court rendering the prior judgment would not have had subject matter jurisdiction." 1 Restatement (Second), Judgments, § 28, comment (d), p. 279 (1982). In such circumstances, "there is no reason why preclusion should not apply" if "the procedures followed in the two courts are comparable in quality and extensiveness, and the first court was fully competent to render a determination of the issue on which preclusion is sought." Id.; see, e.g., *Connecticut Natural Gas Corp.* v. *Miller*, supra, 239 Conn. 324 (collateral estoppel does not bar relitigation of issue "if the nature of the hearing carries procedural limitations that would not be present at a later hearing" (internal quotation marks omitted)). The plaintiff does not allege that the procedures in the Probate Court were not comparable in quality and extensiveness to the procedures in the Superior Court. Nor

does the plaintiff challenge the Probate Court's competence to render a final determination on the issue of whether the 2014 will expressed the decedent's actual testamentary desires. We therefore conclude that the plaintiff is collaterally estopped from litigating her tortious interference with the right of inheritance claim.

## B

### Res Judicata

Lastly, we address whether the judgment of the Appellate Court may be affirmed on the alternative ground that the plaintiff's tortious interference with contractual relations claim is barred by the doctrine of res judicata. As our discussion in part II A 1 indicates, the plaintiff did not raise this claim in the prior Probate Court action. Nonetheless, "[r]es judicata bars the relitigation of claims actually made in the prior action as well as any claims that might have been made there." *Wheeler* v. *Beachcroft, LLC*, supra, 320 Conn. 157. In order "for res judicata to apply, four elements must be met: (1) the [prior] judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity [in the prior action] to litigate the [omitted claim] fully; and (4) the same underlying claim must be at issue." Id., 156–57.

The parties' dispute centers on the third and fourth elements of the res judicata test, namely, whether the plaintiff had an adequate opportunity to litigate her tortious interference with contractual relations claim in the prior Probate Court action, despite having failed to do so, and whether her tortious interference with contractual relations claim is the "same" for res judicata purposes as the undue influence claim adjudicated in the Probate Court.[16] We conclude that the plaintiff lacked an adequate opportunity to litigate her tortious interference with contractual relations claim in the Probate Court, and, therefore, we do not address whether tortious interference with contractual relations and undue influence are the "same" claim for res judicata purposes under the transactional test. See id., 159 ("To determine whether claims are the 'same' for res judicata purposes, this court has adopted the transactional test. . . . Under the transactional test, res judicata extinguishes 'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.' ").

To determine whether the plaintiff had an adequate opportunity to litigate her tortious interference with contractual relations claim, "we . . . apply the test set forth in the Restatement (Second) of Judgments, § 25, comment (e). Under this test, '[w]hen the plaintiff brings an action on [a] claim in a court, either state or federal,

in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is [rendered] with respect to it, he may not maintain a second action in which he tenders the other theory or ground. If, however, the court in the first action *would clearly not have had jurisdiction* to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should [not be] precluded.' " (Emphasis altered.) *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 44, 694 A.2d 1246 (1997). Thus, the doctrine of res judicata "generally does not apply [when] [t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy because of the limitations on the subject matter jurisdiction of the courts . . . ." (Internal quotation marks omitted.) *Marrese* v. *American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 382, 105 S. Ct. 1327, 84 L. Ed. 2d 274 (1985); see also 1 Restatement (Second), Judgments, supra, § 26 (1) (c), pp. 233–34 (recognizing exception to res judicata if "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts . . . and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief").

The fundamental flaw in the defendants' invocation of the res judicata doctrine is that the Probate Court did not have jurisdiction to adjudicate the plaintiff's claim that the defendants had tortiously interfered with her contractual relations with respect to the proposed amendment to the antenuptial contract. "The Probate Court is a court of limited jurisdiction prescribed by statute, and it may exercise only such powers as are necessary to the performance of its duties." (Internal quotation marks omitted.) *Bender* v. *Bender*, 292 Conn. 696, 707, 975 A.2d 636 (2009). Although § 45a-98 vests the Probate Court with jurisdiction to "determine title or rights" to property "that constitutes, or may constitute, all or part of . . . any decedent's estate"; General Statutes § 45a-98 (a) (3); it does not vest the Probate Court with jurisdiction to adjudicate common-law tort claims or to award compensatory damages against individual defendants as a remedy for tortious conduct. See *Bender* v. *Bender*, supra, 716 ("[§] 45a-98 . . . does not provide jurisdiction over a breach of contract action, whether to obtain damages or specific performance, simply because the property belongs to an estate"); *Gaynor* v. *Payne*, supra, 261 Conn. 599 (Probate Court lacked jurisdiction to adjudicate common-law claims or to award compensatory damages); *Palmer* v. *Hartford National Bank & Trust Co.*, 160 Conn. 415, 430, 279 A.2d 726 (1971) ("[a] court of probate is unable to award

damages"); *Geremia* v. *Geremia*, 159 Conn. App. 751, 770, 125 A.3d 549 (2015) ("[n]either § 45a-98 nor any other provision of the General Statutes vests the Probate Court with jurisdiction, exclusive or otherwise, over those actions sounding in tort"); see also footnote 5 of this opinion.

Our analysis in *Gaynor* v. *Payne*, supra, 261 Conn. 585, is instructive. In *Gaynor*, the plaintiff, Paul A. Gaynor, in his capacity as administrator of the estate of his mother, filed an action against the defendant, S. Giles Payne, the former executor of the mother's estate, alleging negligence, breach of fiduciary duty, and breach of contract with respect to Payne's administration of the estate. Id., 586–88. Payne claimed in relevant part that Gaynor's action was barred by the doctrine of res judicata "because the beneficiaries of the estate failed to object to the accounting proffered by [Payne] upon his resignation as executor," and the Probate Court had approved Gaynor's final accounting of the estate. Id., 594; see id., 587–88. We concluded that Gaynor's breach of fiduciary duty claim was barred by the doctrine of res judicata because "[t]he Probate Court had jurisdiction to adjudicate [that claim] in passing [on] the validity of the accounting rendered by [Payne]," and, therefore, this claim "could have been brought in the Probate Court." Id., 598. With respect to Gaynor's negligence and breach of contract claims, by contrast, we concluded that "[t]hese claims [were] brought against [Payne] personally, rather than in his capacity as executor of the decedent's estate. The Probate Court did not have jurisdiction to adjudicate or award damages for these common-law claims, which must be brought in a court of general jurisdiction. It therefore would have been futile for the beneficiaries to have raised these claims in the Probate Court . . . ." Id., 599. Because Gaynor had "not been afforded the opportunity to litigate" his common-law negligence and breach of contract claims in the prior Probate Court action, we held that "[t]he doctrine of res judicata [did] not bar [Gaynor]" from litigating those claims in the Superior Court. Id., 600–601.

Likewise, in the present case, the Probate Court clearly did not have subject matter jurisdiction to adjudicate the plaintiff's tortious interference with contractual relations claim or to award the plaintiff compensatory damages. As such, the plaintiff lacked an adequate opportunity to litigate this claim fully in the Probate Court. See, e.g., *New England Estates*, *LLC* v. *Branford*, 294 Conn. 817, 848, 988 A.2d 229 (2010) (claim for wrongful taking of property in violation of 42 U.S.C. § 1983 was not barred by res judicata effect of prior action regarding valuation of property because, "[i]n the valuation appeal, the owners could not have raised their claim that the town violated the public use requirement of the takings clause"); *Connecticut National Bank* v. *Rytman*, supra, 241 Conn. 49–52 (state law

claims were not barred by res judicata effect of prior federal action under Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., because federal court clearly would have declined to exercise pendent jurisdiction over state law claims); *In re Probate Appeal of Cadle Co.*, 152 Conn. App. 427, 444–45, 100 A.3d 30 (2014) (plaintiff's claims were not barred by res judicata effect of prior probate action because they "were not litigated in the prior probate appeal . . . [and] could [not] have been litigated," and, therefore, "[t]he plaintiff did not have an adequate opportunity to address the . . . claims fully and fairly in the prior probate appeal"); *Daoust* v. *McWilliams*, 49 Conn. App. 715, 728, 716 A.2d 922 (1998) (state law claims were not barred by res judicata effect of prior federal action under 42 U.S.C. § 1983 insofar as "the plaintiff did not have an adequate opportunity to litigate [those] common-law tort claims because the federal court declined to exercise supplemental jurisdiction over them"). We therefore conclude that the plaintiff's tortious interference with contractual relations claim is not barred by the doctrine of res judicata.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to remand the case to the trial court for further proceedings on the plaintiff's tortious interference with contractual relations claim; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

* January 3, 2023, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Hereinafter, we refer to the Stamford home, the annuity, the E-Trade account, and the 50 percent ownership interest in B&F Electric Motors, Inc., collectively as the Solon assets.

[2] The only distinction between the complaint in the present action and the complaint filed in the first action is that, in the first action, the plaintiff sued Slater both individually and in his fiduciary capacity as administrator of the decedent's estate, whereas, in the present action, Slater is named in his individual capacity only.

[3] Prior to filing her appeal, the plaintiff withdrew her intentional infliction of emotional distress, negligent infliction of emotional distress and negligence claims. See *Solon* v. *Slater*, supra, 204 Conn. App. 657 n.10.

[4] We granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly uphold the trial court's determination that the plaintiff was collaterally estopped from litigating tort claims against her deceased husband's lawyer and her stepson for intentional interference with the amendment of a prenuptial agreement and interference with an inheritance expectancy as a result of a Probate Court adjudication overruling the plaintiff's objection to the admission of her deceased husband's will in probate." *Solon* v. *Slater*, 337 Conn. 908, 253 A.3d 43 (2021).

[5] General Statutes § 45a-98 (a) provides in relevant part: "Probate Courts in their respective districts shall have the power to . . . (3) except as provided in section 45a-98a or as limited by an applicable statute of limitations, determine title or rights of possession and use in and to any real, tangible or intangible property that constitutes, or may constitute, all or part of any trust, any decedent's estate, or any estate under control of a guardian or conservator, including the rights and obligations of any beneficiary of the trust or estate and including the rights and obligations of any joint tenant with respect to survivorship property . . . ."

Although § 45a-98 has been amended since the events underlying the present case; see, e.g., Public Acts 2019, No. 19-137, § 110; Public Acts 2018, No. 18-45, § 16; those amendments have no bearing on the merits of this

appeal. In the interest of simplicity, we refer to the current revision of the statute.

Pursuant to General Statutes § 45a-98a (a), "[t]he Probate Court shall have jurisdiction under subdivision (3) . . . of subsection (a) of section 45a-98 only if (1) the matter in dispute is not pending in another court of competent jurisdiction and (2) the Probate Court does not decline jurisdiction. Before the initial hearing on the merits of a matter in dispute in which jurisdiction is based on subdivision (3) . . . of subsection (a) of section 45a-98, the Probate Court may, on its own motion, decline to take jurisdiction of the matter in dispute. Before the initial hearing on the merits of such a matter, any interested person may file an affidavit that such person is entitled and intends under section 52-215 to claim a trial of the matter by jury. In that case, the Probate Court shall allow the person filing the affidavit a period of sixty days within which to bring an appropriate civil action in the Superior Court to resolve the matter in dispute. If such an action is brought in the Superior Court, the matter, after determination by the Superior Court, shall be returned to the Probate Court for completion of the Probate Court proceedings."

[6] General Statutes § 45a-24 provides in relevant part: "All orders, judgments and decrees of courts of probate, rendered after notice and from which no appeal is taken, shall be conclusive and shall be entitled to full faith, credit and validity and shall not be subject to collateral attack, except for fraud."

[7] To the extent the plaintiff alleged that the defendants' tortious conduct prevented her from inheriting the Solon assets by will, such a claim is cognizable, if at all, via a cause of action for tortious interference with the right of inheritance. We address the plaintiff's tortious interference with the right of inheritance claim in part II A 2 of this opinion.

[8] "Undue influence is the exercise of sufficient control over the person, the validity of whose act is brought in question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised. . . . It is stated generally that there are four elements of undue influence: (1) a person who is subject to influence; (2) an opportunity to exert undue influence; (3) a disposition to exert undue influence; and (4) a result indicating undue influence." (Citation omitted; internal quotation marks omitted.) *Dinan* v. *Marchand*, 279 Conn. 558, 560 n.1, 903 A.2d 201 (2006). Undue influence "is a species of fraud"; *Lockwood* v. *Lockwood*, 80 Conn. 513, 521, 69 A. 8 (1908); or a type of duress; *Gengaro* v. *New Haven*, 118 Conn. App. 642, 652, 984 A.2d 1133 (2009); or coercion that "sound[s] in tort." *D'Agostino* v. *D'Addio*, 6 Conn. App. 187, 188, 504 A.2d 528 (1986), cert. denied, 199 Conn. 805, 508 A.2d 32 (1986).

[9] The Probate Court pleadings and transcript (if any exist) are not a part of the record on appeal. Nor were they submitted into evidence in the trial court. Our review is therefore limited to the Probate Court decree and the evidence submitted in connection with the defendants' motions for summary judgment. See, e.g., *Rainbow Housing Corp.* v. *Cromwell*, 340 Conn. 501, 523 n.12, 264 A.3d 532 (2021) (declining to consider evidence that was not presented to trial court on motion for summary judgment); *U.S. Bank National Assn.* v. *Eichten*, 184 Conn. App. 727, 756, 196 A.3d 328 (2018) (appellate courts "do not consider evidence not presented to the trial court").

[10] In support of their motions for summary judgment, the defendants submitted an affidavit from Nusbaum, which is dated April 17, 2017, two years after the Probate Court decree.

[11] The Probate Court's factual finding that "[t]he decedent provided for [the plaintiff] under the [antenuptial agreement]" does not alter our conclusion because the validity of the antenuptial agreement was not in dispute, and it was uncontested that the decedent provided for the plaintiff in that agreement. Whether the decedent intended to leave the plaintiff with the Solon assets via an amendment to the antenuptial agreement was not an issue before the Probate Court.

Our conclusion in this regard is bolstered by a contextual clue to the purpose of the Probate Court's reference to the antenuptial agreement. As the Probate Court recognized in its decree, the burden of proof in an undue influence claim differs depending on the claimant's relationship to the decedent and whether the claimant is "the natural [object] of the [decedent's] bounty . . . ." *Berkowitz* v. *Berkowitz*, 147 Conn. 474, 477, 162 A.2d 709 (1960). "Ordinarily, the burden of proof on the issue of undue influence rests on the one alleging it," but, in *Berkowitz*, we recognized "an exception to this principle when it appears that a stranger, holding toward the testator a relationship of trust and confidence, is a principal beneficiary under the

will and that the natural objects of the testator's bounty are excluded." Id., 476–77. The Probate Court held that the exception delineated in *Berkowitz* was inapplicable to the plaintiff's claim of undue influence regarding the 2014 will, reasoning that the plaintiff had not been excluded from the decedent's bounty because the decedent had provided for her in the antenuptial agreement. The Probate Court further found that the principal beneficiaries of the decedent's estate were not strangers but, rather, the revocable trust, the beneficiaries of which were the decedent's children. Thus, the Probate Court was not resolving a dispute between the parties regarding the antenuptial agreement but simply making the factual findings necessary to allocate the burden of proof in connection with the plaintiff's undue influence claim.

[12] There is a split of authority among our sister state courts whether to recognize a cause of action for tortious interference with the right of inheritance. See, e.g., *Nelsen* v. *Nelsen*, 508 P.3d 301, 331 (Idaho 2022) ("[t]he tort of [intentional interference with an expected inheritance] has become widely recognized; twenty-five of the forty-two states that have considered it have adopted it"); see also J. Goldberg & R. Sitkoff, "Torts and Estates: Remedying Wrongful Interference with Inheritance," 65 Stan. L. Rev. 335, 361–63 (2013). Among those states that recognize the tort, most have held "that the plaintiff, in order to pursue the cause of action, must show that there are no adequate alternative remedies to the tort action" available in the Probate Court. *Jackson* v. *Kelly*, 345 Ark. 151, 158, 44 S.W.3d 328 (2001); see also Restatement (Third), Torts, Liability for Economic Harm § 19 (2), p. 161 (2020) (claim for tortious interference with inheritance "is not available to a plaintiff who had the right to seek a remedy for the same claim in a probate court"). In the present appeal, we need not decide whether a cause of action for tortious interference with the right of inheritance is available to a plaintiff who failed to seek a remedy for the same claim in the Probate Court, and, therefore, we express no opinion on this issue.

[13] In the operative complaint, the plaintiff also alleged that the defendants tortiously interfered with her right of inheritance "by inducing an inter vivos transfer, in that they had [the decedent] execute a will [through which] a trust [was] set up for the purpose of removing all of his assets from his estate, such that there is nothing or no will to elect against." The undisputed evidence in the summary judgment record reflects that the Solon assets were not transferred during the decedent's lifetime but, instead, were part of the decedent's residuary estate, which was distributed to the beneficiaries of the decedent's revocable trust pursuant to the terms of the 2014 will. Because there is no evidence of an inter vivos transfer of the Solon assets, we need not decide whether a probate court's judgment admitting a will to probate collaterally estops a claim of tortious interference with right of inheritance on the basis of an alleged improper depletion of estate assets during a decedent's lifetime.

[14] The plaintiff also argues that her tortious interference with the right of inheritance claim is not barred because the burden of proof governing her undue influence claim in the Probate Court was clear and convincing evidence, whereas the burden of proof governing her tortious interference with the right of inheritance claim is a fair preponderance of the evidence. See *Birnie* v. *Electric Boat Corp.*, 288 Conn. 392, 406, 953 A.2d 28 (2008) ("[t]he application of the collateral estoppel doctrine may not be proper when the burden of proof . . . differ[s] between the first and subsequent actions"); 1 Restatement (Second), Judgments, supra, § 28 (4), p. 273 (party is not precluded from relitigating issue if "[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action"). The defendants respond that the preponderance standard governs both the plaintiff's undue influence and tortious interference claims.

It is not clear from the Probate Court decree which burden of proof was applied to the undue influence claim. Even if we assume that the Probate Court applied the clear and convincing standard, the plaintiff's briefing in this appeal leaves us unable to determine the proper burden of proof governing her claim for tortious interference with the right of inheritance. Although some courts apply the preponderance of the evidence standard to such a claim, other courts apply a higher burden of proof. Compare *Peralta* v. *Peralta*, 139 N.M. 231, 234, 131 P.3d 81 (App. 2005) (The court recognized "the different burdens of proof required to contest a will and to establish tortious interference with inheritance . . . . A claim that a will was procured through undue influence must be shown by clear and convincing evidence . . . [whereas] a claim of tortious interference with inheritance need only be established by a preponderance of the evidence." (Citation

omitted.)), with *Wickert* v. *Burggraf*, 214 Wis. 2d 426, 429, 570 N.W.2d 889 (App. 1997) (burden of proof of "clear, satisfactory and convincing evidence," which generally was applicable "in [will contest] actions," also was "applicable to [intentional interference with expected inheritance] tort actions" (internal quotation marks omitted)). The plaintiff has not cited any case law or provided any support for her bare assertion that the burden of proof governing a claim of tortious interference with the right of inheritance is a preponderance of the evidence. Given the plaintiff's failure to address this complex legal issue in her brief, we decline to address it. See, e.g., *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008) ("We are not obligated to consider issues that are not adequately briefed. . . . Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In addition, mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice." (Citations omitted; internal quotation marks omitted.)). As a result, we cannot say that the doctrine of collateral estoppel is inapplicable due to the difference between the applicable legal standards.

[15] As the plaintiff points out, tortious interference with the right of inheritance is a different type of claim than the undue influence objection adjudicated in the Probate Court action in the sense that "[t]he object of a will contest proceeding is not to secure a personal judgment against an individual defendant but . . . to set aside a will." (Internal quotation marks omitted.) The fact that the claims are not identical, however, does not mean that the doctrine of collateral estoppel is inapplicable. By definition, the doctrine of "collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties . . . [*in connection with*] *a different claim*." (Emphasis added; internal quotation marks omitted.) *Weiss* v. *Weiss*, supra, 297 Conn. 472 n.20. The plaintiff's contention that the doctrine of collateral estoppel is inapplicable to " 'distinct' " or "different" claims ignores this fundamental principle.

[16] In our view, there is no serious doubt that the first element of the doctrine of res judicata is satisfied because the Probate Court was a court of competent jurisdiction to render a final judgment on the merits of the plaintiff's undue influence and lack of testamentary capacity objections to the admission of the 2014 will to probate. Neither party addresses the second element of the res judicata test in their appellate briefs, but we note that, pursuant to the Probate Court Rules of Procedure, a "party" to a Probate Court action includes "a person having a legal or financial interest in a proceeding before the court, a fiduciary under section 4.2 and any other person whom the court determines to be a party. The term has the same meaning as interested party." Probate Court Rules § 1.1 (27); see Probate Court Rules § 4.2 (a) ("[a]n executor or administrator of a decedent's estate is a party: (1) in the estate proceeding in which the executor or administrator was appointed; and (2) in any other probate proceeding in which the estate has an interest"). In the Probate Court proceeding, Solon had a financial interest in the decedent's residuary estate, and Slater was the proposed executor of the decedent's estate under the terms of the 2014 will. In the present action, however, suit was brought against Slater in his individual capacity, not his fiduciary capacity. Nonetheless, we assume, without deciding, that the defendants were parties to the prior Probate Court action and that the second element of the res judicata test has been satisfied under these circumstances.

----